HAROLD MORGAN & another[1] *vs.* LABORATORY CORPORATION
OF AMERICA & others.[2]

No. 04-P-1472.

Suffolk. September 19, 2005. - March 28, 2006.

Present: ARMSTRONG, C.J., RAPOZA, & DOERFER, JJ.

*Negligence,* Adequacy of warning, Standard of care. *Damages,* Interest, Loss
of consortium, Tort. *Practice, Civil,* Judgment notwithstanding verdict,
Verdict, Instructions to jury.

In a civil action for negligence brought by a patient and his wife against a
blood testing corporation for failure to notify immediately the patient's
doctor of life-threatening values resulting from the patient's blood draw,
the judge properly denied the defendant's motion for judgment notwith-
standing the verdict, where there was sufficient evidence from which a
rational trier of fact could conclude that the defendant was negligent in
failing to telephone the patient's doctor with the test results, even while
concluding that the defendant had complied with Federal regulations in
relating the test results to an employee of the clinic where the blood was
drawn, and the jury did not need expert testimony regarding whether the
clinic employee's conduct was reasonable under the circumstances
[820-822]; similarly, the judge did not abuse his discretion in denying a
motion for a new trial, where the verdict was not against the weight of the
evidence [822] and the damages awarded were not disproportionate to the
injuries suffered [822-823].

In a civil action for negligence, the defendant was not prejudiced by the
itemization on the verdict sheet of damages for loss of social or recreational
activity. [823]

This court concluded that it was error for the judge in an action for negligence
against a testing laboratory to instruct the jury on the cap for damages ap-
plicable in a medical malpractice action, but that the error did not cause
the laboratory any prejudice. [824]

No error arose in a civil action from the judge's computation of interest on
the judgment, in its entirety, from the date the complaint was filed.
[824-825]

CIVIL ACTION commenced in the Superior Court Department on
February 1, 1999.

[1]Bonnie Morgan.

[2]Kenneth Craig Kent, Jeffrey L. Zilberfarb, and Tamar Foster Barlam.

The case was tried before *Mitchell J. Sikora*, J., and a motion for judgment notwithstanding the verdict or for a new trial was heard by him.

*Alan D. Rose* (*Michael J. Mott* with him) for Laboratory Corporation of America.

*Jodi M. Petrucelli* (*Benjamin R. Zimmerman* with her) for the plaintiffs.

*Sidney W. Adler* (*John D. Cassidy* & *Robert L. Bouley* with him) for Jeffrey L. Zilberfarb & others.

RAPOZA, J. A Superior Court jury found defendant Laboratory Corporation of America (Lab Corp.) negligent and awarded plaintiff Harold Morgan (Morgan) compensatory damages in the amount of $1,050,000[3] and awarded his wife, plaintiff Bonnie Morgan, $150,000 for loss of consortium. The trial judge denied Lab Corp.'s motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, and this appeal ensued. We affirm.

*Facts.*[4] Dr. Kenneth Craig Kent, known as Craig Kent, a vascular surgeon, first treated Morgan at Beth Israel Hospital (Beth Israel) between March 25, 1996, and April 10, 1996. Following surgery necessitated by a blood clot, Dr. Kent prescribed the anticoagulant Coumadin, which requires careful monitoring of the anticoagulation level of the patient's blood. It was Dr. Kent's practice in 1996 to instruct the laboratory that undertook to analyze blood tests to telephone him with the results the day they were available, regardless of the results. He relied on receiving such telephone calls to monitor the ongoing effects of Coumadin on his patients.

Following his discharge from Beth Israel on April 10, 1996, Morgan began going to Wood River Health Services (Wood

---

[3]Five hundred thousand dollars was for pain and suffering, $325,000 was for loss of bodily function, and $225,000 was for loss of social and recreational activity.

[4]We consider the facts as could be found by the jury in the light most favorable to the plaintiffs. "In reviewing the denial of a motion for judgment notwithstanding the verdict, as well as for a directed verdict, the standard to be employed is whether 'the evidence, construed against the moving party, justifies a verdict against him.' " *Bonin* v. *Chestnut Hill Towers Realty Corp.*, 392 Mass. 58, 59 (1984), quoting from *D'Annolfo* v. *Stoneham Hous. Authy.*, 375 Mass. 650, 657 (1978).

River) near his home in Rhode Island to have his blood drawn in order to continue checking the level of anticoagulants in his system. After drawing Morgan's blood, Wood River would send it to Lab Corp. for testing. Lab Corp., in turn, would process the blood specimen and send the results by phone and by mail to the ordering physician, in this case Dr. Kent.

In August, 1996, Morgan was hospitalized again at Beth Israel for a fungal infection and was eventually put on the anti-fungal medication Fluconazole. Fluconazole can interact with Coumadin, prolonging the bleeding time of the patient. On August 15, 1996, Morgan had his blood drawn at Wood River. The laboratory results for that blood test showed a significant change in the anticoagulation level of Morgan's blood. The form that accompanied the blood draw from that date had a handwritten note to call "Dr. Kent Craig" (reversing Dr. Kent's first and last names) and his telephone number.

The results from Morgan's blood draw on August 15, 1996, constituted life-threatening or "panic" values for which he required immediate medical attention. According to Lab Corp.'s policy in 1996 for the communication of panic values, someone from the testing department in Raritan, New Jersey, would report such results immediately to the physician or ordering entity, even if it was at night or during nonbusiness hours. If for some reason contact was not successful, then the responsibility for notification during business hours fell to Lab Corp.'s customer service department, which at that time was located in Norwood and supervised by Donna Mello.

Mello had no independent memory of how or why the report of Morgan's August 15, 1996, blood draw came to her atten-tion, but she understood her own contemporaneous handwritten notations on the last page of the report to indicate a conversa-tion with "Ahmed," the night supervisor at Lab Corp.'s facility in Raritan. She was certain that Ahmed must have tried but failed to reach either the doctor or Wood River and consequently called her (Mello) to make the necessary notifications of Morgan's panic values.

From her notations on the report, Mello concluded that she would have followed Ahmed's call with a telephone call to

"Susan" at Wood River on August 16, 1996, at 10:30 A.M.[5] There was no indication on the report, however, that Mello made any attempt to call Dr. Kent. Indeed, as of August 23, 1996, Dr. Kent had not received a telephone call from anyone informing him of the August 15, 1996, test results, nor had he received a report in the mail.

Susan Lepak, the laboratory supervisor at Wood River, testified that the results should have gone directly to Dr. Kent, not to Wood River. Moreover, she had no memory of receiving a call from Lab Corp. concerning Morgan's August 15, 1996, test results. If she had, she would have told them to call the ordering physician or other person on the requisition form who was supposed to receive the telephone call.

Lab Corp.'s expert, Dr. Kent Lewandrowski, testified that in 1996, Lab Corp. was subject to the Clinical Laboratory Improvement Amendments (CLIA), 42 U.S.C. § 263a (1988), which regulates clinical laboratories. On cross-examination, he further testified that CLIA did not require a laboratory to comply with instructions on the requisition form and that calling a physician with the test results was merely a "courtesy." The regulations implementing CLIA require that a laboratory "develop and follow written procedures for reporting imminent life-threatening laboratory results or panic values. In addition, the laboratory must immediately alert the individual or entity requesting the test or the individual responsible for utilizing the test results when any test result indicates an imminent life-threatening condition." 42 C.F.R. § 493.1109(f) (1993).

A few days after the blood draw on August 15, 1996, Morgan noticed the onset of a low backache. By August 24, 1996, the pain was "very sharp, very cutting," and he was having pain in the groin, in the front as well as the back. He went to Westerly Hospital in Rhode Island where he learned that he had massive internal bleeding, which had settled in the lower abdomen and was pressing on his nerves, causing him to suffer femoral neuropathy.

---

[5]As the trial judge found in his ruling on posttrial motions, "[Mello] testified (in interpretation of her handwritten annotation on the lab sheet) that she had telephoned the anticoagulation test result to a person named 'Susan' at Wood River at 10:30 A.M."

Morgan and his wife filed suit against Dr. Kent, later amending the complaint to add Drs. Zilberfarb and Barlam as well as Lab Corp. The case was tried before a jury, which answered special verdict questions finding no negligence on the part of the physicians, but concluding that Lab Corp. was negligent with respect to its reporting of the test results.

*Discussion.* On appeal, Lab Corp. argues that (1) the trial judge erred in denying its motion for judgment notwithstanding the verdict; (2) the verdict was against the weight of the evidence; (3) the jury verdict was excessive; and (4) the trial judge erred in using an improper verdict sheet, in instructing the jury, and in making several evidentiary rulings.

1. *Judgment notwithstanding the verdict.* In reviewing a trial judge's decision on a motion for judgment notwithstanding the verdict, we look to see "whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.' " *Poirier* v. *Plymouth,* 374 Mass. 206, 212 (1978), quoting from *Raunela* v. *Hertz Corp.,* 361 Mass. 341, 343 (1972). We do not consider weight and credibility of the evidence. *Sahagan* v. *Commonwealth,* 25 Mass. App. Ct. 953, 953 (1988).

Having reviewed the trial record, we conclude there was sufficient evidence from which a rational factfinder could decide that Lab Corp. was negligent in failing to call Dr. Kent. In light of Susan Lepak's testimony, the jury could also have concluded that Wood River did not receive telephone notice from Lab Corp. of the test results. In any event, by the time Dr. Kent received the mailed test results, sometime after August 23, 1996, the damage to Morgan was well underway. The evidence permitted the jury to find Lab Corp. negligent on the grounds that had Lab Corp. called the test results directly to Dr. Kent's office, he would have been able to intervene to adjust Morgan's medication and thereby spare him the massive bleeding that resulted, along with the consequent neurological damage.

Even if the jury concluded that Mello had in fact called "Susan" at Wood River, they could still have reached the same conclusion as to negligence on the part of Lab Corp., despite the Federal provisions cited by Lab Corp. Lab Corp. contends

that under the CLIA regulations, the entity requesting the test was Wood River, and thus by telephoning "Susan," it complied with the Federal guidelines. Although the jury may consider such evidence in their deliberations, compliance with such regulations is not conclusive evidence on the issue of negligence. *MacDonald* v. *Ortho Pharmaceutical Corp.*, 394 Mass. 131, 140, cert. denied, 474 U.S. 920 (1985).[6] The jury could still have concluded that Lab Corp. was negligent as it knew the seriousness of the test results, appreciated the need for immediate action, and realized that contacting Wood River rather than the doctor would unreasonably delay the medical intervention needed to address the "panic values" that it was reporting. In sum, the jury could have found Lab Corp. negligent even though it may have complied with Federal regulations.

Lab Corp. also argues that the evidence was insufficient to establish negligence because the plaintiffs did not produce an expert to testify that its failure to notify the physician requesting the test was negligent and a breach of the proper standard of care. Expert testimony is required only "where the precautions taken (or omitted) were in fact the result of a deliberated judgment in the particular case on the part of a physician or skilled staff." *Goldberg* v. *Northeastern Univ.*, 60 Mass. App. Ct. 707, 709 (2004), quoting from *Bennet* v. *Winthrop Community Hosp.*, 21 Mass. App. Ct. 979, 981 (1986). Here, the plaintiffs' action against Lab Corp. concerned neither an allegation of a missed diagnosis nor the failure to institute policies and procedures for the reporting of life-threatening results. Rather, it was based upon alleged inadequacies in the actual reporting of indisputably urgent test results. Moreover, according to the facts as presented, the reporting responsibility lay with a Lab Corp. administrator, whose job functions required no

---

[6]Lab Corp. also argues that the plaintiffs' theory of common-law negligence was preempted by CLIA. It cites no authority, however, for its contention that CLIA was intended to have preemptive effect. The mere assertion of a proposition without citation does not constitute appellate argument. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). We therefore do not address whether CLIA preempts Massachusetts common law in these circumstances. We also need not address Lab Corp.'s related argument concerning the judge's failure to instruct the jury regarding the purported preemptive effect of 42 C.F.R. § 493.1109(f).

special training or skill comparable to that of a physician or other licensed professional. The jury were thus capable of determining, without the assistance of an expert, whether or not Mello's conduct was reasonable under the circumstances.[7]

Even assuming, arguendo, that expert testimony was required, Dr. Rosenthal, a board-certified internist, hematologist, and medical oncologist, testified that it was not good practice for Lab Corp. to have called Wood River rather than Dr. Kent when the responsibility for monitoring Morgan rested with Dr. Kent. Dr. Rosenthal was well-qualified to testify as to the expectations of physicians regarding the reporting of test results by laboratories as well as the standard of practice for laboratories. To the extent that Lab Corp. objected to his testimony on grounds of inadequate notice, that consideration was addressed to the trial judge's sound discretion, which was not abused here. Finally, any question concerning Dr. Rosenthal's qualification as an expert witness was within the judge's wide discretion, as was the decision whether to admit his testimony. *Commonwealth* v. *Frangipane*, 433 Mass. 527, 533 (2001). On this record we discern no abuse of discretion.

2. *Weight of the evidence.* "It is a well-established principle that '[t]he granting or denying of a new trial on the ground that the verdict is against the weight of the evidence rests in the discretion of the judge.' " *Moose* v. *Massachusetts Inst. of Technology*, 43 Mass. App. Ct. 420, 426 (1997), quoting from *Robertson* v. *Gaston Snow & Ely Bartlett*, 404 Mass. 515, 520, cert. denied, 493 U.S. 894 (1989). Our review of the evidence reveals no abuse of discretion in the judge's ruling. There was ample evidence before the jury to permit them to reach the conclusion that Lab Corp. was negligent in the circumstances.

3. *Damages.* Lab Corp. also contends that a new trial should have been granted because the verdict was excessive. "An appellate court will not find an abuse of discretion in the judge's refusal to grant a new trial on the ground of excessive damages, unless the damages awarded were greatly disproportionate to the injury proven or represented a miscarriage of justice."

---

[7]As the jury were presented with a case of common-law negligence against Lab Corp., the judge did not err, as Lab Corp. argues, in failing to instruct the jury concerning professional malpractice.

*Truong* v. *Wong*, 55 Mass. App. Ct. 868, 873 (2002), quoting from *Moose* v. *Massachusetts Inst. of Technology*, 43 Mass. App. Ct. at 427.

Expert testimony and medical records in evidence indicate that Morgan suffered nerve damage and became disabled as a result of the intra-abdominal hemorrhage caused by a high level of anticoagulants in his blood that was not treated. Morgan testified as to the resulting severe pain he endured, the paralysis of his right leg, the fear that he would never walk again, the month spent in a nursing home, the painful therapy required while learning to use a wheel chair and then a walker, the curtailment of his activities, and the change in his life. His wife testified regarding her fears, how the marriage changed, and the necessity for her to start working outside the home at age sixty. Based on the evidence presented, the damages awarded were not disproportionate to the injuries suffered, and we do not conclude that the judge abused his discretion in denying a new trial on the basis of excessive damages.

4. *Other alleged errors.* a. *Verdict sheet.* Lab Corp. argues that under *Keene* v. *Brigham & Women's Hosp., Inc.*, 56 Mass. App. Ct. 10 (2002), *S.C.*, 439 Mass. 223 (2003), the verdict slip was erroneous. It claims that "loss of bodily function" and "loss of social or recreational activity" are subsumed within "pain and suffering" and should not have been separately set out as compensable elements. *Keene* states explicitly, however, that the court did not reach the issue because the injured plaintiff in that case lacked "cognitive awareness of his loss." *Id.* at 29.

Here, even if we were to decide that loss of social or recreational activity should not have been set out separately as compensable damages, we do not see how Lab Corp. was prejudiced by such itemization. The judge explained to the jury that Morgan was entitled to only one recovery. He followed with a definition of the three types of injury that they could consider, explaining how each is separate and distinct from the others. The judge also admonished the jury several times to avoid a duplicative or excessive award by keeping the concepts separate in making their determination. The jury are presumed to have followed those instructions, and the record does not indicate otherwise. See *Tufankjian* v. *Rockland Trust Co.*, 57 Mass. App. Ct. 173, 180 n.16 (2003).

b. *Instructions under G. L. c. 231, § 60H.* Lab Corp. claims that the trial judge erred in instructing the jury on the $500,000 cap for damages applicable in medical malpractice actions when the defendants, including Lab Corp., agreed to waive it. See G. L. c. 231, § 60H. Passing on the question whether the cap is applicable, given the nature of Morgan's injuries, we conclude that it was error to give the instruction as it related to the defendant Lab Corp., but not for the reasons set forth by Lab Corp. on appeal. As we have already determined, the claim against Lab Corp. was based upon traditional negligence principles rather than medical malpractice tenets. Consequently, Lab Corp. was not entitled to the § 60H damages instruction in this action.

That does not end our analysis, however. We also conclude that the error did not cause Lab Corp. any prejudice. In these circumstances the jury, had they been instructed properly, would have been permitted to ignore the statutory cap in awarding damages for Lab Corp.'s negligence. As the amounts for individual items of pain and suffering and loss of companionship did not exceed $500,000, and because we have determined that the entire award was supported by the evidence and not excessive, Lab Corp. has failed to demonstrate how it has been harmed. Moreover, it is not likely that Lab Corp. would have fared any better had the judge singled it out as being exempt from the cap.

c. *Jury charge on subsequent, intervening cause.* The plaintiffs are correct that Lab Corp. did not preserve its objection to this portion of the charge. In any event, given that the jury did not reach the issue of causation as to the physician defendants, error, if any, was harmless. See *Footit* v. *Monsees,* 26 Mass. App. Ct. 173, 180-182 (1988).

d. *Prejudgment interest.* There was no error in computing interest from the date the complaint was filed. See *Bernier* v. *Boston Edison Co.,* 380 Mass. 372, 388-390 (1980); *Gill* v. *North Shore Radiological Assocs.,* 385 Mass. 180, 181-182 (1982). Lab Corp. contends that *Gill* is inapplicable because Lab Corp. was added as a party defendant three years after the filing of the initial complaint. We read *Gill* to hold otherwise. There, as here, North Shore Radiological Associates, Inc., was

added as a defendant more than three years after Gill's complaint was filed.

Nor did the trial judge err in calculating interest on the entire amount. See G. L. c. 231, § 6B. See also *Kuppens* v. *Davies*, 38 Mass. App. Ct. 498, 500 (1995), citing *Carey* v. *General Motors Corp.*, 377 Mass. 736, 746 (1979).

We do not dwell on the remaining issues raised by Lab Corp. other than to state that we have reviewed the record and conclude they are without merit.

*Judgment affirmed.*

*Order denying motion for judgment notwithstanding the verdict or new trial affirmed.*