FRANCIS N. MURPHY, JR. *vs.* PLANNING BOARD OF HOPKINTON.

No. 06-P-1019.

Suffolk. March 16, 2007. - October 4, 2007.

Present: LENK, GREEN, & SIKORA, JJ.

*Subdivision Control,* Decision of planning board, Approval not required, Exemption. *Limitations, Statute of. Real Property,* Restrictions. *Statute,* Construction. *Words,* "Governmental body."

A landowner's challenge of conditions imposed fifteen years earlier by a local planning board when endorsing an "approval not required" plan involving the subject land was, of necessity, a challenge of the "approval not required" endorsement itself and, as such, was untimely brought. [388-391]

Where a town planning board endorsed an "approval not required" plan with conditions, and where the town and the owner of the subject land entered into a contemporaneous written agreement memorializing such conditions, the resulting restrictions on the land were held by the town, acting through the board, as a "governmental body" within the meaning of G. L. c. 184, § 26, and, as such, were exempt from the requirements of G. L. c. 184, §§ 27-30, and were therefore enforceable [391-397]; further, where such restrictions reinforced a legislatively stated public policy, where the public was the beneficiary of the restrictions, and where the restrictions imposed did not appear unreasonable, the common law did not render the restrictions unenforceable [397-399].

This court declined to address a plaintiff's assertion that did not rise to the appropriate level of appellate argument. [399-400]

CIVIL ACTION commenced in the Land Court Department on July 29, 2002.

The case was heard by *Gordon H. Piper,* J., on motions for summary judgment.

*Stephanie A. Kiefer* for the plaintiff.

*Richard J. DeAngelis* for the defendant.

LENK, J. The plaintiff, Francis N. Murphy, Jr., owns an undeveloped 3.77-acre parcel of land in the town of Hopkinton (town), which he purchased out of foreclosure in 1997 for $25,000. The parcel, also known as lot 25, remains undeveloped,

apparently because there is no means of access to it. While the parcel has frontage on two streets, Ash Street and Penny Meadow Lane, there are problems with each as a means of access to Murphy's parcel. The frontage on Ash Street is bordered by wetlands, and Murphy has not been able to secure the necessary permits for access over those wetlands. Penny Meadow Lane, a private way (also known as lot 20), presents a different problem, one that gives rise to this lawsuit: Murphy's parcel is subject to restrictions that prohibit any physical access or egress over Penny Meadow Lane.

The restrictions on Murphy's parcel came into being in 1982, fifteen years before Murphy bought the parcel. His predecessor in title, Mizzen Realty Corp. (Mizzen), submitted an ANR (approval not required) plan to the town's planning board (board) pursuant to G. L. c. 41, § 81P. On July 29, 1982, the board endorsed the plan, but did so subject to express conditions noted on the face of the plan:

> "Approval not required endorsement is conferred upon this plan of lot 25 with the express conditions that no physical access or egress over lot 20 [Penny Meadow Lane] is allowed and no rights will be transferred granting such access and egress."

Mizzen and the town, acting through the board, contemporaneously entered into a written agreement (agreement) in which the parties memorialized the aforesaid conditions and provided for the endorsement of the ANR plan.[1] Both the ANR plan and the agreement were recorded together the following day. Prior to these events, the zoning board of appeals of Hopkinton had

---

[1]The agreement states, in pertinent part, as follows:

"Whereas, the Board will cause the said plan [the ANR plan] to be executed only if access to the dwelling to be constructed upon said lot is obtained over the said Lot 25 exclusively;

"Now, therefore, the parties, for themselves, their successors, assigns and grantees do hereby covenant and agree as follows:

"1. Access and egress to any dwelling or for any other use of the said Lot 25 shall be solely and exclusively upon or over said lot 25 and no person, firm, corporation or other entity shall at any time use Lot 20 as shown on said plan to obtain access or egress to said Lot 25.

granted Mizzen a special permit allowing it to construct a driveway through and adjacent to the wetlands, on lot 25.[2] Neither Mizzen nor its successors in title took advantage of this special permit to construct a means of access to lot 25 over the wetlands via the frontage on Ash Street; the special permit has apparently since lapsed. Apart from the instant lawsuit, neither Mizzen nor its successors appealed from the board's 1982 conditional endorsement of the parcel's ANR plan or otherwise attempted to set aside the 1982 agreement.

Scrolling forward to 2002, Murphy brought this litigation after five years of being unable to develop his parcel, lot 25. He filed a three-count complaint in the Land Court against the board, asserting claims for both declaratory and equitable relief. He seeks a judgment declaring the restrictions on his parcel to be unenforceable for either of two reasons: (1) the board was without legal authority under the subdivision control law, as set forth in G. L. c. 41, §§ 81K-81GG, to endorse an ANR plan conditionally or to impose conditions on property through a recorded agreement; (2) even if the board had authority to impose such conditions, the restrictions are unenforceable under both G. L. c. 184, §§ 27-32, and the common law. Equitable relief is warranted in any event, Murphy asserts, because the board's actions constitute a taking of his property. The parties filed cross motions for summary judgment; the judge denied Murphy's motion and allowed the board's. Judgment entered, dismissing all three counts of Murphy's complaint. Murphy appeals, maintaining in essence that the judge erred in ruling that the board had shown itself entitled to judgment as matter of law. We affirm.

---

"2. Should the Board or the Building Inspector of the Town of Hopkinton at any time determine that access or egress to or from said Lot 25 is being obtained on or over said Lot 20, the said Building Inspector shall have the right forthwith and without further notice, to revoke the building permit or occupancy permit then pertaining to the said Lot 25.

"3. The covenants and agreements contained herein forbidding the use of said Lot 20 for access and egress to said Lot 25, shall be deemed to run with the land being said Lot 25 and shall be binding upon Mizzen, its successors, assigns and grantees."

[2]The board also included on the face of the ANR plan a note that states: "See zoning board of appeals unanimous decision on a special permit to construct a driveway through and adjacent to the wetlands. Decision date Sept. 1, 1981."

*Analysis.* We examine in turn Murphy's contentions that, contrary to the judge's ruling, the 1982 restrictions on his parcel are invalid and unenforceable and that he otherwise has suffered a taking of his property.

1. *The 1982 restrictions.* Murphy asserts two different claims in his quest to invalidate the restrictions on access affecting his parcel. On the one hand, he challenges the board's legal authority to have imposed conditions on the parcel and to have endorsed an ANR plan conditionally, as it did in 1982. His argument in this regard is in essence that the ANR statute[3] confers on the board only limited ministerial authority when it is called upon to endorse an ANR plan. On this view of the statute, the board may only endorse the plan or withhold endorsement; there is no middle ground permitting a conditional endorsement. Murphy contends, on this basis, that the conditions in the ANR plan and the agreement (but not the ANR approval itself, the benefit of which Murphy wishes to retain) must be invalidated. He argues alternatively that, even if the board's authority to impose conditions is not open to challenge, the conditions imposed are in any event unenforceable because the requirements of G. L. c. 184, §§ 27(*a*) and 30, have not been met, and the restrictions do not comport with common-law principles governing the creation, validity, and enforcement of servitudes.

a. *The board's authority.* Like the motion judge, we do not reach the question whether the board acted without legal authority in 1982, when it endorsed the ANR plan conditionally. We agree with the judge that Murphy's challenge of the conditions imposed is of necessity a challenge of the ANR endorsement itself and that, as such, it is untimely brought.

General Laws c. 41, § 81BB,[4] provides a twenty-day period during which an interested party may file an appeal of the

---

[3]General Laws c. 41, § 81P, as appearing in St. 1963, c. 363, § 1, provides, in relevant part: "Any person wishing to cause to be recorded a plan of land . . . who believes that his plan does not require approval under the subdivision control law, may submit his plan to the planning board . . . and, if the board finds that the plan does not require such approval, it shall forthwith, without a public hearing, endorse thereon . . . the words 'approval under the subdivision control law not required' . . . . . Such endorsement shall not be withheld unless such plan shows a subdivision."

[4]General Laws c. 41, § 81BB, as amended through St. 2002, c. 393, § 6,

denial of an ANR plan. The subdivision control law does not, however, provide a statutory mechanism for judicial review of an endorsed ANR plan, let alone expressly provide a time period for such appeals. This statutory gap was addressed in *Stefanick v. Planning Bd. of Uxbridge*, 39 Mass. App. Ct. 418, 424 (1995), where abutters sought to overturn the endorsement of an ANR plan on the grounds that the plan instead required subdivision approval. In those circumstances, we held that a complaint in the nature of certiorari, governed by a sixty-day limitations period, G. L. c. 249, § 4, was the appropriate avenue for review. Certainly, no longer a period would be justified in the circumstances here. As the motion judge observed:

> "[G]iven the undisputed facts in the record, I need not decide the question of what was the appropriate mechanism of review available to Mizzen, or any other interested party, at the time of the Board's endorsement of the Plan. . . . To allow an appeal of a planning board action twenty years after the fact, by a party who was not an interested party at the time of the Board's action, and who only later became an interested party seventeen years after the Board acted by knowingly purchasing the land directly affected by the Board's action, would contravene the purpose of the Subdivision Control Law. Rather than allow for indefinite periods of appeal, the Subdivision Control

provides in pertinent part:

"Any person, whether or not previously a party to the proceedings, or any municipal officer or board, aggrieved by a decision of a board of appeals under section eighty-one Y, or by any decision of a planning board concerning a plan of a subdivision of land, or by the failure of such a board to take final action concerning such a plan within the required time, may appeal to the superior court for the county in which said land is situated or to the land court; provided, that such appeal is entered within twenty days after such decision has been recorded in the office of the city or town clerk or within twenty days after the expiration of the required time as aforesaid, as the case may be, and notice of such appeal is given to such city or town clerk so as to be received within such twenty days. The court shall hear all pertinent evidence and determine the facts, and upon the facts so determined, shall annul such decision if found to exceed the authority of such board, or make such other decree as justice and equity may require. The foregoing remedy shall be exclusive, but the parties shall have all rights of appeal and exceptions as in other equity cases."

Law aims to establish clear procedures and time-frames for appealing planning board action. . . . Parties affected by planning board action under the Subdivision Control Law should be able to rely on those actions that have not been promptly challenged. . . . Here, I cannot reconcile a delay of twenty years with the goals of the Subdivision Control Law."

In an effort to sidestep the conclusion that his challenge to the board's 1982 endorsement is untimely, Murphy argues that he does not challenge the ANR endorsement itself. He claims instead to challenge only the unauthorized conditions that are contained in the endorsed ANR plan and the agreement and suggests that, even if the conditions cannot be viewed as independent of the endorsement,[5] his predecessor in title, Mizzen, did not have an avenue of appeal from the conditional endorsement in 1982, prior to our 1995 decision in *Stefanick*. Neither contention withstands scrutiny.

We begin by noting that, in 1981, we made plain that a § 81P endorsement is not "impervious to judicial review." *Lee* v. *Board of Appeals of Harwich*, 11 Mass. App. Ct. 148, 151 (1981). Had Mizzen been dissatisfied with the conditional ANR endorsement, it certainly could have taken an appeal, the only question being the time period within which the appeal could have been taken. The reality here, however, is that Mizzen was not dissatisfied with the endorsement. Quite to the contrary, Mizzen voluntarily agreed to the conditions in the agreement and to the conditional endorsement of its ANR plan. It did so after having earlier submitted an ANR plan that the board refused to approve. Had Mizzen been dissatisfied with the conditions imposed and the concomitant conditional endorsement of the ANR plan, it could have declined to enter into the contemporaneous agreement, forced the issue with the board on the newly submitted ANR plan, and run the risk that the new plan, too, would be denied — a decision which then, of course, expressly was appealable under § 81BB.

Mizzen, with a special permit in hand allowing the parcel a

---

[5]It does not appear that Murphy seeks to set aside only the conditions in the agreement in the event that the conditional ANR endorsement were to stand.

means of access to a different street, instead apparently chose the path of compromise; conditions were added to the face of the ANR plan, which the board endorsed, the parties memorialized the restriction in a contemporaneously executed agreement, and both documents were recorded at the same time the following day. The conditions that Murphy now challenges, about which he had notice when he bought the parcel, cannot be unbundled at this late date from the approval of the ANR plan that Murphy wishes to preserve: both inextricably are bound up together in the § 81P endorsement process from which no timely appeal was taken.[6] Murphy cites no legal authority to the contrary. It is too late in the day to revisit whether the board acted lawfully in imposing the conditions as part of the § 81P process. Cf. *Campanelli* v. *Planning Bd. of Ipswich*, 358 Mass. 798, 798-799 (1970) (where successor in title to covenantor bought land with knowledge that subdivision conditionally had been approved when covenantor entered into conditional approval agreement under G. L. c. 41, § 81U, and no appeal had been taken from conditional approval, successor in title will not be heard to question validity of conditional approval).

b. *Validity of the restrictions*. Murphy contends that the restrictions are nonetheless unenforceable by virtue of their nonconformity with (i) the requirements of G. L. c. 184, §§ 27(*a*) and 30; and (ii) common-law principles governing servitudes.

(i) *G. L. c. 184, §§ 27(*a*) and 30.* As in effect at all relevant times, G. L. c. 184, § 26, exempts from the coverage of G. L. c. 184, §§ 27-30, restrictions held by any governmental body. Section 26, as appearing in St. 1990, c. 520, § 2, provides as follows:

"All restrictions on the use of land or construction thereon which run with the land subject thereto and are

---

[6]Murphy complains that this result would render the § 81P endorsement impervious to challenge. That, of course, is generally the purpose of limitations periods. See *Cullen* v. *Planning Bd. of Hadley*, 4 Mass. App. Ct. 842, 842-843 (1976); *Calnan* v. *Planning Bd. of Lynn*, 63 Mass. App. Ct. 384, 389-391 (2005). Indeed, in enacting the subdivision control law, the Legislature provided for brief appeals periods in order that interested parties could rely on unchallenged actions. See *Selectmen of Pembroke* v. *R. & P. Realty Corp.*, 348 Mass. 120, 125 (1964); *Stefanick* v. *Planning Bd. of Uxbridge*, 39 Mass. App. Ct. at 421.

imposed by covenant, agreement, or otherwise, whether or not stated in the form of a condition, in any deed, will or other instrument executed by or on behalf of the owner of the land or in any order of taking shall be subject to this section and sections twenty-seven to thirty, inclusive, except . . . (*c*) conservation, preservation, agricultural preservation, and affordable housing restrictions, as defined in section thirty-one which have the benefit of section thirty-two, and other restrictions held by any governmental body, if the instrument imposing such conservation, preservation, agricultural preservation, affordable housing or other restriction is duly recorded and indexed in the grantor index in the registry of deeds or registered in the registry district of the land court for the county or district wherein the land lies so as to affect its title, and describes the land by metes and bounds or by reference to a recorded or registered plan showing its boundaries."

The judge concluded that, pursuant to § 26, the town, acting through the board, holds the subject restrictions as a "governmental body." As such, the restrictions affecting lot 25 that Murphy challenges in this litigation are enforceable because they are exempt from the requirements of G. L. c. 184, §§ 27-30, and are not subject to the procedural requirements of G. L. c. 184, § 32.

Murphy maintains that the judge misconstrued the statute and that the 1982 agreement imposing the restrictions which the town seeks to enforce is unenforceable for a number of reasons, i.e., the town is not the owner of "an interest in benefitted land" pursuant to § 27(*a*), inserted by St. 1961, c. 448, § 1; the agreement is not "of actual and substantial benefit to a person claiming rights of enforcement" pursuant to § 30, inserted by St. 1961, c. 448, § 1; the board did not act pursuant to any power "granted by any general or special law" pursuant to § 32, as appearing in St. 1990, c. 520, § 4; and the restriction does not reinforce a legislatively stated public purpose pursuant to § 32.

We look first to the language and history of the relevant sections of c. 184.[7] General Laws c. 184, § 26, first was enacted in 1961, as § 1 of c. 448 of the Acts of 1961. Chapter 448 of the

---

[7]While not of precedential authority, the panel nonetheless found persuasive,

Acts of 1961 added §§ 26-30 to the end of c. 184, for the purpose of eliminating obsolete restrictions on land titles. As first enacted, § 26 included no exemption for governmental restrictions. However, the section was modified significantly by c. 666 of the Acts of 1969. Section 2 of that chapter rewrote the first paragraph of G. L. c. 184, § 26, and § 5 added §§ 31-33 to the end of c. 184.[8] As rewritten, § 26 included, as clause (c), an exemption for conservation, preservation, affordable housing, and other restrictions held by any governmental body. Newly added § 31 defined agricultural and watershed preservation restrictions as well as conservation and affordable housing restrictions. Newly added § 32 established procedural requirements for their approval, and provided that such restrictions would not be unenforceable on certain specified grounds.

Newly added § 33 established a public restriction tract index to record conservation, preservation, and other restrictions held by a governmental body. The first paragraph of § 33, inserted by St. 1969, c. 666, § 5, described the index and was framed in permissive terms, stating that "[a]ny city or town may file with the register of deeds for the county or district in which it is situated a map or set of maps of the city or town, to be known as the public restriction tract index, on which may be indexed conservation and preservation restrictions and restrictions held by any government body." The fifth paragraph of § 33, however, limited to thirty years the duration of public restrictions not indexed in the public restriction tract index.

Following several intervening amendments, the fifth paragraph of § 33 was deleted by c. 351, § 2, of the Acts of 1985.[9] As a consequence, while public restrictions may be indexed in a public restriction tract index (if one is maintained), the failure so to index a public restriction does not subject it to a thirty-year limitation on its duration. The amendment did not otherwise

and relied upon substantially, the analysis of c. 184 by then Land Court Justice Green, in Town of Chelmsford vs. Greater Lowell Council, Inc. — Boy Scouts of America, Land Ct., No. 261762 (Apr. 26, 2001).

[8]Section 1 of c. 666 amended G. L. c. 184, § 23, to exempt from its coverage restrictions having the benefit of the newly added § 32.

[9]Section 1 of St. 1985, c. 351, added agricultural preservation restrictions to the list of specifically described restrictions. Affordable housing restrictions were added to the list in 1990. St. 1990, c. 520, § 2.

limit the exemption under clause (*c*) of § 26 of conservation, preservation, and agricultural restrictions, and "other restrictions held by any governmental body" from the provisions of §§ 27-30.

In its present form, then, § 26 exempts from the provisions of §§ 27-30 (a) conservation, preservation, agricultural preservation, and affordable housing restrictions, each of which (1) is subject to the procedural and approval requirements, and entitled to the benefits of, §§ 31-33, and (2) may be held by either private or governmental bodies; and (b) other restrictions held by any governmental body.

In interpreting statutes, "[n]one of the words of a statute is to be regarded as superfluous, but each is to be given its ordinary meaning without overemphasizing its effect upon the other terms appearing in the statute, so that the enactment considered as a whole shall constitute a consistent and harmonious statutory provision capable of effectuating the presumed intention of the Legislature." *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.*, 352 Mass. 617, 618 (1967), quoting from *Bolster* v. *Commissioner of Corps. & Taxn.*, 319 Mass. 81, 84-85 (1946). *Flemings* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 374, 375-376 (2000). "[T]he statutory language itself is the principal source of insight into the legislative purpose." *Commonwealth* v. *Smith*, 431 Mass. 417, 421 (2000), quoting from *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, 382 Mass. 580, 585 (1981). "In addition, 'words of a statute must be construed in association with other statutory language and the general statutory plan.' " *Gillette Co.* v. *Commissioner of Rev.*, 425 Mass. 670, 674 (1997), quoting from *Polaroid Corp.* v. *Commissioner of Rev.*, 393 Mass. 490, 497 (1984). See *Stop & Shop Supermarket Co.* v. *Urstadt Biddle Properties, Inc.*, 433 Mass. 285, 288-289 (2001) (construing G. L. c. 184, §§ 23 and 27).

The plain purpose of the 1969 amendments was to exempt certain restrictions held by governmental bodies from the so-called "bring forward" filing requirements imposed under §§ 27-30 to retain enforceability of restrictions. Presumably, the Legislature acted out of concern that important public rights

might be lost through inadvertence, and that monitoring compliance with such requirements would pose too cumbersome a burden on governmental bodies. Similar concerns likely motivated the Legislature in 1985 to relieve cities and towns of the burden to index all public restrictions as a precondition of survival beyond thirty years. Moreover, the reference to "other restrictions held by any governmental body" has appeared in § 26 consistently through the various amendments, though "other restrictions" are conspicuously absent from the list of restrictions subject to the approval and filing requirements, and entitled to protection against the defenses to enforcement, that are specified in § 32. To ignore the statutory reference to "other restrictions held by any governmental body" would render the reference superfluous; conversely, the fact that each of the restrictions defined in § 31 is susceptible of ownership by a private entity supports the conclusion that the reference to them is not rendered superfluous by the broad exemption for "other restrictions held by any governmental body."

The entire framework just described overlays the historic limitation on restrictions, established under G. L. c. 184, § 23. That section limits the duration of restrictions, unlimited as to time, to thirty years, with the following exceptions: (a) restrictions created by gift or devise for public, charitable, or religious purposes; (b) restrictions existing on July 16, 1887; (c) restrictions contained in a deed, grant, or gift of the Commonwealth; and (d) restrictions that have the benefit of § 32 (in other words, conservation, preservation, agricultural preservation, and affordable housing restrictions, but not "other restrictions held by any governmental body").

Read together as part of a harmonious statutory scheme under c. 184, §§ 23 and 26 provide that (a) conservation, preservation, agricultural preservation, and affordable housing restrictions (whether held by a governmental body or a private party) are exempt from the thirty-year limitations imposed by § 23; exempt from the bring forward filing requirements of §§ 27-30; and entitled to the benefits, and subject to the procedural requirements, of § 32; and (b) other restrictions held by any governmental body are exempt from the bring forward filing requirements of §§ 27-30; not entitled to the benefits, or subject

to the procedural requirements, of § 32; and subject to the thirty-year limitation imposed by § 23 (unless eligible for exemption on other grounds).[10] All such restrictions may be indexed in a public restriction tract index maintained pursuant to § 33, but the failure so to index a restriction has no bearing on its enforceability or duration.

Section 26, as appearing in St. 1990, c. 520, § 2, defines a "governmental body" as "the United States or the commonwealth, acting through any of its departments, divisions, commissions, boards or agencies, or any political subdivision or public instrumentality thereof or any public authority or any quasi-public entity or any instrumentality created pursuant to chapter forty F . . . ." It is undisputed that the town is a political subdivision of the Commonwealth. In addition, the agreement was made "by and between the Town of Hopkinton, a municipal corporation of Middlesex County, Massachusetts, acting by and through its Planning Board . . . and Mizzen Realty Corp."[11]

Furthermore, the board in and of itself qualifies as a governmental body for the purposes of § 26. A planning board is created by statute; its members are appointed or elected; and it reports annually to the city council or town meeting. See G. L. c. 41, §§ 81A, 81C. As the motion judge observed:

"A municipality establishes a planning board pursuant to the authorizing provisions of G. L. c. 41, § 81A. Once the municipality elects to establish a planning board, it is the municipal authority which deals with a variety of vital statutory functions, including involvement in master planning (G. L. c. 41, § 81D), adoption of an official map (G. L. c. 41, § 81E, et seq.), establishment and discontinuance of the lines of ways (G. L. c. 41, § 81J), the study and framing of zoning legislation (G. L. c. 40A, § 5), and

---

[10]We voice no view whether the subject restrictions are exempt from the thirty-year limitation imposed by § 23.

[11]Although Murphy mentions in passing that the town, by and through its selectmen, did not approve either the 1982 ANR plan or the agreement, he provides no evidence, either in the record or at oral argument, that such approval was required, or that in fact it was not given. On the record before us, we proceed on the assumption that there were no statutory or formal impediments to the board's execution of the 1982 documents.

of course, many critical steps in the arena of subdivision control (G. L. c. 41, § 81K, et seq.)."

See G. L. c. 40A, § 9; G. L. c. 41, §§ 81B-81GG; G. L. c. 45, §§ 3, 5; G. L. c. 121B, §§ 48, 50. The judge noted that in executing its "distinct but closely related function" of reviewing and approving definitive subdivision plans, a planning board has authority under G. L. c. 41, § 81U, to require a subdivision in certain cases to enter into "a covenant, executed and duly recorded by the owner of record, running with the land," with any such covenant either being "inscribed on the plan or contained in a separate document, referred to on the plan." Moreover, for purposes of the Massachusetts open meeting law (G. L. c. 39, § 23B[12]), a governmental body is defined as "every board, commission, committee or subcommittee of any district, city, region or town, however elected, appointed or otherwise constituted . . . ." G. L. c. 39, § 23A, as appearing in St. 1988, c. 116, § 3. See *District Attorney for the N. Dist.* v. *Board of Trustees of the Leonard Morse Hosp.*, 389 Mass. 729, 731 (1983); *Freeman* v. *Planning Bd. of W. Boylston*, 419 Mass. 548, 559 n.13, cert. denied, 516 U.S. 931 (1995); *Nantucket Land Council, Inc.* v. *Planning Bd. of Nantucket*, 5 Mass. App. Ct. 206, 213 (1977). Given all this, and the favoritism, as it were, displayed by the Legislature toward governmental bodies in § 26, we agree with the judge's determination that "[i]t would be hard to conclude that such a board . . . is not a 'governmental body' of the sort contemplated by G. L. c. 184, § 26." Accordingly, the challenged restriction, as held by a governmental body, is exempt from the requirements of §§ 27-30, is not subject to the procedural requirements of § 32, and is enforceable.

(ii) *Enforceability under common law.* We now turn to Murphy's alternative argument that the restrictions are unenforceable as a matter of common law. Murphy maintains that the town and Mizzen were not in privity of estate at the time of the agreement, and that the restrictions do not benefit any land

[12]General Laws c. 39, § 23B, as appearing in St. 1976, c. 397, § 6, requires that "[a]ll meetings of a governmental body shall be open to the public and any person shall be permitted to attend any meeting except as otherwise provided by this section."

owned by the town. Accepting for the sake of argument Murphy's contention that the agreement is not a restrictive covenant running with the land but is instead an easement in gross held by the town, see *Well-Built Homes, Inc.* v. *Shuster*, 64 Mass. App. Ct. 619, 626-627 (2005), we agree that, at common law, such easements did not run with the land. *Garland* v. *Rosenshein*, 420 Mass. 319, 321-322 (1995). However, "[w]here the beneficiary of the restriction is the public and the restriction reinforces a legislatively stated public purpose, old common law rules barring the creation and enforcement of easements in gross have no continuing force." *Bennett* v. *Commissioner of Food & Agriculture*, 411 Mass. 1, 6 (1991). We agree with the judge that this is a case where the "old common-law rules" do not apply.

Here, the relevant legislatively stated public policy is that behind the subdivision control law,[13] as stated in G. L. c. 41, § 81M, as appearing in St. 1969, c. 884, § 2:

> "The powers of a planning board . . . under the subdivision control law shall be exercised with due regard for the provision of adequate access to all of the lots in a subdivision by ways that will be safe and convenient for travel; for lessening congestion in such ways and in the adjacent public ways[;] . . . and for coordinating the ways in a subdivision with each other and with the public ways in the city or town in which it is located and with the ways in neighboring subdivision."

The town's planning director states in her affidavit that the town denied further access across Penny Meadow Lane (lot 20) because it "does not meet the standards for use as a more heavily traveled way." She attests that the board "restricted the use of Lot 20 in an effort to advance the goal of orderly land development in the Town so as to provide for the health and safety of the residents." Murphy argues, notwithstanding this, that the town did not act with a proper public purpose in restricting access to his parcel, maintaining that the restrictions on access were put in place in order to avoid liability from ongoing lawsuits

---

[13]General Laws c. 41, § 81K, defines the subdivision control law as G. L. c. 41, §§ 81K-GG, inclusive.

brought by abutters to Penny Meadow Lane.[14] We are at a loss to understand how, in the circumstances, taking action that both ensures safe and adequate access and also avoids the hazards of litigation would constitute proof of the town's improper public purpose in conditioning the endorsement of Mizzen's plan on restricted access over lot 20. Cf. *Benevolent & Protective Order of Elks, Lodge No. 65* v. *Planning Bd. of Lawrence*, 403 Mass. 531, 539, 551-552 (1988). Furthermore, insofar as the affidavit from the town's planning director states that the restrictions on the use of lot 20 were imposed on lot 25 in "an effort to . . . provide for the health and safety of the residents," it is reasonable to infer that the public is the beneficiary of the restrictions.

Given that the challenged restrictions reinforce a legislatively stated public policy, that the public is the beneficiary of the restrictions, and that the restrictions imposed do not appear unreasonable, the common law does not render the restrictions unenforceable. Our conclusion in this regard finds support in *Bennett*, 411 Mass. at 3, where the instrument granting an agricultural preservation restriction provided that the landowner could construct a dwelling unit "subject . . . to the approval of commissioner." The servitude, being for the benefit of the public and reinforcing a legislatively stated public purpose, was held to be enforceable according to its own terms. *Id.* at 5.

2. *The takings claim.* Without benefit of citation to relevant legal authority or reasoned argument, Murphy makes the sweeping assertion that the challenged restrictions, when combined with his present inability to obtain a permit to access his parcel via Ash Street, constitute a compensable taking of his property.

---

[14]Murphy suggests that the 1982 restrictions on using Penny Meadow Lane to gain access to lot 25 were based on the board's "*ad hoc* efforts to minimize its litigation exposure" with those who already used Penny Meadow Lane and who claimed their use should be exclusive. A prior 1979 ANR endorsement had created Penny Meadow Lane, and the owners of properties in the subdivision that had frontage on Penny Meadow Lane had filed suit against the board and the subdivision developer (among others) in an attempt to prevent additional traffic over the way. Murphy argues that the board placed the restrictions on the 1982 ANR plan even though Murphy's predecessor in interest had the ability and intention to grant an easement over Penny Meadow Lane to all the abutting properties, including Murphy's parcel, lot 25. It bears mention in this regard, however, that Murphy's predecessor in interest did not appeal from the 1979 plan, nor from the conditional 1982 ANR plan.

This does not constitute appellate argument within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), and we do not consider the matter further. See *Zora* v. *State Ethics Commn.*, 415 Mass. 640, 642 n.3 (1993), and cases cited; *Morgan* v. *Laboratory Corp. of Am.*, 65 Mass. App. Ct. 816, 821 n.6 (2006).

*Judgment affirmed.*