McCallum, J.
The plaintiff, Jeffrey Buttrick (“Buttrick”), brought this breach of contract action against his former employer, defendant Intercity Alarms, LLC (“Intercity Alarms”), alleging that it terminated his employment in violation of the progressive discipline policy contained in its employee manual. A jury found in favor of Buttrick and awarded him $41,888.00 in damages. The trial judge denied Intercity Alarm’s motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. This appeal followed.
From the late 1980s through 2004, Intercity Alarms employed Buttrick for three nonconsecutive periods. During that time, it issued at least three versions of its “Employee Reference Manual.” The record appendix contains only the 2000 and 2004 versions (respectively, “2000 Manual” and “2004 Manual”).[2] The latter was in effect at the time of Buttrick’s termination in May, 2004, although no differences significant to this appeal exist between the two versions.[3]
The stated purpose of the 2004 Manual was to “inform all employees of the current policies and programs” of the company, and to “assist in clarifying important aspects of employment.” The manual contained forfy-seven sections explaining the company’s policy on, among other things, hiring, attire, gum chewing, sexual harassment, and discipline. It also contained a detachable form requesting the employee’s signature to confirm his receipt and acknowledgment of the manual.
*98 The section entitled “Disciplinary Policy” stated, “It is the policy of Intercity Alarms that no disciplinary action taken against any employee will be arbitrary, capricious, unreasonable or discriminatory.” The next paragraph provided, “No company likes to discipline or separate its employees from employment, however, disciplinary action will be taken whenever an employee violates any rule of the company, fails to adhere to any policies and procedures, or fails to uphold the spirit of our corporate objectives.” The disciplinary policy section concluded that the “severity of the action taken will be in accordance with the following: Verbal Counseling ... Written Counseling... Suspension.”[4] There was no provision for termination in that section.
On January 22, 2004, James Yurasits (‘Yurasits”), then service manager at Intercity Alarms, conducted Buttrick’s annual employee review. The written review indicated that Buttrick’s technical skills were excellent, but that his attitude and interpersonal skills were below average. Yurasits testified that in addition to the written review, he issued Buttrick a “verbal warning for 90 days.” Buttrick denied that he received such a warning.
Intercity Alarms fired Buttrick on May 4,2004. Buttrick testified that on that date, John Davenport (“Davenport”), then general manager, asked for Buttrick’s resignation three times during an afternoon meeting. Buttrick refused. Davenport then terminated his employment. In the subsequent “exit interview” conducted by Yurasits, Yurasits indicated that Buttrick had been terminated because of “unsatisfied [sic] performance,” specifically noting his “refusal to go on a service call,” refusal “to give sales manager information regarding a sales possibility without compensation,” and providing “false information on time card.”
*99 On April 6, 2005, Buttrick filed a six-count complaint against Intercity Alarms. Before trial, counts III-VT were dismissed by agreement.[5] At the close of Buttrick’s case, Intercity Alarms moved for directed verdicts on count I (breach of an implied employment contract) and count II (breach of an implied employment contract based on terms in the employee manual). The trial judge allowed the former, but denied the latter. After a trial on count II, the jury returned a verdict for Buttrick in the amount of $41,888.00. Intercity Alarms moved for judgment notwithstanding the verdict (“judgment n.o.v.”) or, in the alternative, for a new trial on the grounds that the verdict was against the weight of the evidence and the damages were excessive. The trial court denied both motions, and judgment was entered for Buttrick.
1. Intercity Alarms argues that it was entitled to judgment n.o.v. because there was no evidence to support a finding of an implied contract based on the terms of the employee manual. It also argues that, even if such an implied contract did exist, its termination of Buttrick’s employment without prior warning or suspension was not a breach of that contract.
“In considering whether the trial judge properly denied [the defendant’s] motion for judgment notwithstanding the verdict, our inquiry is whether ‘anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.’” Simmons v. Monarch Machine Tool Co., 413 Mass. 205, 210 (1992), quoting Raunela v. Hertz Corp., 361 Mass. 341, 343 (1972). “We do not weigh the evidence or consider the credibility of the witnesses.” Conway v. Smerling, 37 Mass. App. Ct. 1, 3 (1994). “Evidence that contradicts the testimony of the nonmoving party is to be ignored.” Id.
Massachusetts law assumes at-will employment unless there exists, expressly or impliedly, a contract governing the terms and conditions of employment. See Jackson v. Action for Boston Community Dev., Inc., 403 Mass. 8, 9 (1988). “[0]n proper proof, a personnel manual can be shown to form the basis of an ... implied contract.” Id. at 13. In Jackson, on cross motions for summary judgment, the Supreme Judicial Court held that the plaintiff-employee had not entered into an implied contract with the employer based on the following six factors: (1) the employer retained the right to modify unilaterally the manual’s terms; (2) the manual provided that it was for “guidance” as to the employer’s policies; (3) there was no negotiation between the employer and the employee regarding the terms of the manual; (4) the manual stated no term of employment; (5) the employer called no special attention to the manual; and (6) the employee did not sign or manifest his assent to the manual or acknowledge that he understood its terms. Id. at 14-15.
In O’Brien v. New England Tel. & Tel. Co., 422 Mass. 686 (1996), the Supreme Judicial Court clarified Jackson, stating that its six factors “are not a rigid list of prerequisites, but rather explain factors that would make a difference or might make a difference in deciding whether the terms of a personnel manual were at least impliedly part of an employment contract.” Id. at 692. The Court noted that negotiations regarding the terms of the manual between employer and employee are not an *100 essential precondition to enforcement of those terms. Id. Further, any disclaimer stating that a manual creates no contractual rights, or reserving a unilateral right to modify the manual, while relevant, is not dispositive. Id. at 693; Ferguson v. Host Int’l, Inc., 53 Mass. App. Ct. 96, 102-103 (2001). Rather, the central question remains whether the employee “would reasonably conclude that the employer was presenting the manual as a statement of the conditions under which employment could continue.”[6] O’Brien, supra at 693.
In this case, the 2004 Manual states that the employer may unilaterally modify the manual’s terms, and that the manual serves only as a guide, not an employment contract. Further, Buttrick admitted on cross-examination that he did not negotiate the terms of the 2004 Manual. It is also clear that the manual failed to state a term of employment. Buttrick emphasizes, however, the special attention called to the manual by Intercity Alarms. Buttrick testified that Bill Fallon (“Fallon”), then operations manager at Intercity Alarms, told him it was “very necessary” to sign the 2000 Manual because of a noncompetition clause in the manual.[7] Further, Yurasits testified that he had furnished a copy of the 2004 Manual to Buttrick and had asked him to sign it no fewer than three times. Finally, as to Buttrick’s assent to the 2000 Manual, he testified that he had understood himself to be bound by its terms, particularly the noncompetition clause, which he said he had honored for two years following his termination. Finally, although he did not sign the 2004 Manual, Buttrick testified that he had seen it. Viewing the evidence in the light most favorable to Buttrick, it would not be unreasonable for Buttrick to regard the manual as a binding commitment.
Intercity Alarms also contends on this appeal that, even if such an implied contract did exist, it committed no breach by terminating Buttrick’s employment without prior warning or suspension. It is essential to note, however, that Intercity Alarms made no such argument in its motion for directed verdict or judgment n.o.v. We decline, therefore, to address that issue. Randolph v. Madison Sq. Realty Mgt., Inc., 2008 Mass. App. Div. 186, 190, quoting Uloth v. City Tank Corp., 376 Mass. 874, 883 (1978) (“A party who advances one theory as the basis for his motion for a directed verdict in the trial court cannot as of right challenge the denial of that motion on a different theory on appeal.”).
2. Intercity Alarms has also appealed the trial court’s denial of its motion for a new trial on the grounds that the verdict was against the weight of the evidence and excessive. “[A] judge should only set aside a verdict as against the weight of the evi *101 dence when it is determined that the jury ‘failed to exercise an honest and reasonable judgment in accordance with the controlling principles of law.’” O’Brien v. Pearson, 449 Mass. 377, 384 (2007), quoting Hartmann v. Boston Herald-Traveler Corp., 323 Mass. 56, 60 (2007). A “judge’s refusal to grant a new trial on the ground of excessive damages” will be upheld “unless the damages awarded were greatly disproportionate to the injury proven or represented a miscarriage of justice.” Morgan v. Laboratory Corp. of America, 65 Mass. App. Ct. 816, 822 (2006), quoting Moose v. Massachusetts Inst. of Tech., 43 Mass. App. Ct. 420, 427 (1997). The denial of a motion for a new trial will not be reversed in the absence of a clear showing of an abuse of judicial discretion. O’Brien, supra; Morgan, supra.
The verdict in favor of Buttrick and against Intercity Alarms necessarily included a subsidiary finding that the employment manual was an implied contract, and that Intercity Alarms breached the disciplinary policy in that contract by terminating Buttrick without prior warning or suspension. During both the trial and the posttrial hearing on his new trial motion, Intercity Alarms’ counsel focused exclusively, however, on the insufficiency of the evidence to support a finding of an implied contract. The added ground that Intercity Alarms now seeks to raise on appeal — that there was insufficient evidence of breach assuming the existence of a contract — was not brought to the attention of the court below. We decline, therefore, to address it. See McHoul, petitioner, 445 Mass. 143, 157 n.11 (2005), citing Cassamasse v. J.G. Lamotte & Son, 391 Mass. 315, 320 (1984); Cronk v. Cronk, 10 Mass. App. Ct. 932 (1980); Draper v. Kids “R" Us, 1996 Mass. App. Div. 27, 28-29.
Judgment affirmed.
So ordered.

 The record appendix also contains a form signed by Buttrick on August 12,1998 acknowledging receipt of an earlier version of the 2000 Manual. Buttrick testified that he had signed the form at the start of his second period of employment. That earlier version of the manual has not been included in the record appendix.

 Specifically, the 2004 Manual added sections on body art and the Family Medical Leave Act, and expanded the sections on technology and telephone use. As to discipline, the 2004 Manual is identical to the 2000 version, adding only the phrase “[a]t the discretion of management” to the sentence “disciplinary actions will be investigated” in the disciplinary policy section of the manual.

 The “Disciplinary Policy” section provided in its entirety:
‘Yerbal Counseling - This is given for the first infraction of less serious rules. When verbal counseling is given, you will have the option to sign the form that verifies the verbal counseling. Signing the form simply indicates that you have seen it. Copies will be placed in your employment file.
‘Written Counseling - This is generally given for repetition of an offense after a verbal counseling, or if the rule infraction is severe enough to warrant a written counseling. Two written counselings for the same reason or a combination of reasons can be cause for termination. You will be given the option to sign the written counseling form. Whether or not you choose to sign the form, you will be given a copy. A copy will be maintained in your personnel file.
“Suspension - A suspension may result from multiple violations of a rule, or when a serious rule violation occurs for the first time. Suspension will mean three days off from work without pay. The notice will state that termination will occur the next time the incident is repeated or if another serious infraction occurs. Suspension may also occur ‘pending investigation.’ If there is no evidence for disciplinary action, the employee will be reinstated with back pay. The procedure outlined above for the written counseling form also apples [sic] to suspensions.”

 Counts III to VI alleged, respectively, retaliatory discharge, wrongful interference with contractual relations, tortious misrepresentation, and breach of contract regarding career advancement.

 In resolving that question, the Court noted that the plaintiff-employee had reasonably relied on the employee manual given that (1) the employer “did not purport to retain the right unilaterally to modify the personnel manual”; (2) the manual provided “more than general guidance as to the employer’s policies”; (3) the manual “contained no reservation of rights or disclaimer of obligations”; and (4) though the plaintiff did not sign the manual, “there was evidence that she received a new copy of the manual annually.” O’Brien, supra at 693-694.

 Although the copy of the 2000 Manual in the record appendix is unsigned, Buttrick testified that he received, reviewed, and signed this manual at the start of his final period of employment in 2002.