THOMAS REGAN & another[1] vs. CONSERVATION COMMISSION
OF FALMOUTH.

No. 09-P-391.

Barnstable. April 7, 2010. - August 26, 2010.

Present: LENK, BROWN, & GRAHAM, JJ.

*Municipal Corporations,* Conservation commission, By-laws and ordinances.
*Administrative Law,* Time of decision. *Department of Environmental
Protection. Wetlands Protection Act.*

Where the defendant town conservation commission (commission) issued a
denial, after the expiration of the relevant statutory deadline, of the plaintiffs'
notice of intent seeking an order of conditions permitting construction on
their property and a variance from the applicable town wetland regulations,
the plaintiffs were entitled to proceed under a superseding order of condi-
tions, based on a revised plan, that was later issued by the Department of
Environmental Protection, despite the commission's timely, subsequent
decision denying the revised plan. [489-490] GRAHAM, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department on
July 28, 2006.

The case was heard by *Regina L. Quinlan,* J., on motions for
judgment on the pleadings.

*Brian J. Wall* for the plaintiffs.

*Patricia A. Harris* for the defendant.

BROWN, J. The plaintiffs, owners of waterfront property in
Falmouth (town), filed a notice of intent and an application for
a variance with the town's conservation commission (commis-
sion) seeking permission to construct a timber pier, ramp, and
floating dock. The commission issued its decision denying the
application one day late. The plaintiffs appealed the decision to
the Superior Court and sought a superseding order of conditions
from the Department of Environmental Protection (DEP). Dur-
ing the course of the proceedings before the DEP, the plaintiffs'

---

[1]Donna Friedman.

plan was revised, and the parties filed a joint motion to stay the Superior Court action in order to seek review of the revised plan by the commission. Although the DEP issued a superseding order of conditions based on the revised plan, the plaintiffs continued to pursue consideration of their revised plan by the commission, resulting in a second decision of denial that was issued timely. Subsequently, a Superior Court judge upheld the commission's second decision of denial.[2] The plaintiffs appealed. In this appeal, we are asked to determine whether the plaintiffs may ignore the commission's second decision and rely, instead, on the superseding order of conditions previously issued by the DEP. See *Oyster Creek Preservation, Inc.* v. *Conservation Commn. of Harwich*, 449 Mass. 859, 863 (2007). We conclude that in the circumstances of this case, the DEP's superseding order of conditions controls.

*Background.* On February 10, 2006, the plaintiffs, Thomas Regan and Donna Friedman, filed a notice of intent with the commission seeking an order of conditions allowing them to construct a timber pier, ramp, and floating dock on their property abutting Green Pond in East Falmouth. Because the density of shellfish in the area exceeded the density allowed by § 10.16(1)(h)(2)[3] of the Falmouth wetland regulations (FWR) applicable to coastal docks and piers, they also applied for a variance pursuant to FWR § 10.13.[4] The commission held public

---

[2]We note that the judgment dated December 17, 2008, appears to contain a clerical error in that it states that the commission's June 8, 2006, decision is being upheld. According to the judge's memorandum of decision and order, it is clear that the judge's intent was to uphold the commission's second decision dated March 14, 2007.

[3]Section 10.16(1)(h)(2) of the FWR prohibits construction of a new dock or pier where there are significant quantities of shellfish essentially within thirty-five feet of the proposed mooring field and the area historically has been used for shellfishing or has the potential to be used for shellfishing.

[4]Section 10.13(1) of the FWR provides that "[a]ny individual who suffers a Hardship as defined in these regulations may petition for a variance from Chapter 235 and these regulations provided: (a) The project does not meet one or more of the performance standards articulated in FWR 10.16 through 10.60; and (b) Mitigation measures are proposed by the Applicant that will allow the project to be conditioned so as to contribute to the protection of the Resource areas identified in Chapter 235; and (c) The project will not create a nuisance; and (d) The hardship was not created by the applicant or the applicant's agents; and (e) The resource areas delineated in Chapter 235 will be better protected if the project is allowed than if the project is denied, or the project has an overriding public benefit."

hearings on March 1, 2006, and May 17, 2006. The public hearing was closed on May 17, 2006. On June 7, 2006, the commission publicly voted to deny the permit and variance, and on June 8, 2006, issued a written decision of denial (first decision) and mailed it to the plaintiffs.

Thereafter, the plaintiffs sought a superseding order of conditions from the DEP.[5] On July 28, 2006, the plaintiffs also commenced an action in Superior Court seeking certiorari review of the commission's first decision claiming, among other things, that the decision was in excess of the commission's authority and jurisdiction; made upon unlawful procedure; and arbitrary, capricious, and an abuse of discretion.

During the course of proceedings before the DEP, the plaintiffs redesigned their plan. Desiring to present the new plan to the commission with the hopes of winning its approval, the plaintiffs and the commission reached a joint agreement in the certiorari case to request a remand to the commission for consideration of the revised plan, but agreed that the Superior Court would retain jurisdiction over the case. They filed a joint motion for remand on December 13, 2006, and on December 18, 2006, a Superior Court judge entered an order remanding to the commission but retaining jurisdiction.[6]

On January 3, 2007, the DEP notified the parties of its conclusion that the project, as revised and conditioned, adequately protects the interests of the Wetlands Protection Act (act), G. L. c. 131, § 40, and issued a corresponding superseding order of conditions permitting construction of the pier, ramp, and floating dock. Nonetheless, on February 7, 2007, the plaintiffs filed a document with the commission explaining the revisions it had

---

[5]The record does not establish the date the plaintiffs sought review by the DEP, but there is no assertion that it was untimely.

[6]The assented to motion requested that the court remand "for further proceedings, findings, and action while retaining jurisdiction over the matter." The motion provided that the plaintiffs within thirty days of the order would file with the commission a revised plan and application and that the commission would schedule a public hearing within twenty-one days and issue a written decision "including all of its findings, standard conditions, and special conditions, if any," within twenty-one days of the close of the public hearing or record. Thereafter, the court record would be supplemented with the administrative record of the remand proceedings. "The case shall then be processed and heard in compliance with [the court's] Standing Order 1-96."

made to the plan and essentially asking the commission to reconsider its first decision denying the permit and variance. On February 28, 2007, the commission held a public hearing to review the revised plan. After discussion, which filled two and one-half single-spaced pages of transcript, the commission voted to "close and take it under advisement leaving it open for one week for submission" of a case cited by the plaintiffs. The plaintiffs, through counsel, supplemented the record with four cases and a synopsis of each by letter dated March 5, 2007. At a commission hearing on March 14, 2007, it was established that the record had been supplemented and then, without further discussion, one of the members read proposed findings. Thereafter, the commission voted to adopt the findings and deny first the variance and then the notice of intent. On March 15, 2007, the commission mailed its written decision of the denials (second decision) to the plaintiffs, but admittedly failed to include the four-page attachment, including the findings of fact. The second decision incorporated the record from the preremand hearings.

On June 25, 2007, a Superior Court judge allowed the parties' joint motion to return the case to the docket and to supplement the record with the administrative record from the remand proceedings. On October 23, 2007, the Supreme Judicial Court issued *Oyster Creek Preservation, Inc.* v. *Conservation Commn. of Harwich*, which clarified that when a conservation commission issues its decision after the statutory deadline, it loses "the right to insist on the provision of its local bylaw, and . . . any superseding order issued by the DEP should apply in its stead." *Id.* at 866. On April 4, 2008, the parties filed cross motions for judgment on the pleadings. The plaintiffs argued that the commission's first decision was untimely and the DEP's superseding order of conditions should apply.[7] Alternatively, the plaintiffs argued that the commission's second decision fails to satisfy the requirements of certiorari review in that it did not result from proper deliberation, constituted an abuse of discretion, was unsupported by substantial evidence, and was the result of the commission's failure to apply the proper standard of review. In

---

[7]Neither the plaintiffs' motion for judgment on the pleadings nor the commission's cross motion are in the record. Our recitation of their content is derived from the judge's memorandum of decision and order.

response, the commission argued that its second decision should be upheld. The judge denied the plaintiffs' motion and allowed the commission's cross motion for judgment on the pleadings.

*Discussion.* Generally, "[a] local authority has final determination regarding project applications when it acts pursuant to an ordinance or by-law which provides more stringent requirements than those provided by the act." *Healer* v. *Department of Envtl. Protection*, 73 Mass. App. Ct. 714, 718 (2009). Thus, when a local conservation commission bases its decision on a by-law that provides greater protection than the act, the decision generally is not preempted by a superseding order of conditions issued by the DEP under the act. *Ibid.* See *Dubuque* v. *Conservation Commn. of Barnstable*, 58 Mass. App. Ct. 824, 826 n.4 (2003), citing *Lovequist* v. *Conservation Commn. of Dennis*, 379 Mass. 7 (1979); *Fafard* v. *Conservation Commn. of Barnstable*, 432 Mass. 194 (2000). A local authority, however, may lose the right to insist on the provisions of its local bylaw if, for example, it fails to comply with the timing provisions contained in the act. See *Oyster Creek Preservation, Inc.*, 449 Mass. at 866 ("timing provisions in the act are obligatory, and a local community is not free to expand or ignore them"). "[W]here a conservation commission issues its decision after the statutory deadline, it is appropriate that it should lose the right to insist on the provisions of its local bylaw, and that any superseding order issued by the DEP should apply in its stead." *Id.*

The act mandates that a conservation commission issue an order within twenty-one days of the close of the public hearing. *Id.* at 863, quoting from G. L. c. 131, § 40. The date an order "issues" is the date it is mailed. *Oyster Creek Preservation, Inc.* at 864. It is undisputed that the commission issued its first decision on the twenty-second day, and in the ordinary course, at least after *Oyster Creek Preservation, Inc.* was issued, the DEP's superseding order would control without further resort to the commission.

Here, in upholding the second decision, the Superior Court judge concluded that the DEP's superseding order does not usurp the local authority because the plaintiffs waived any procedural issue related to the first decision by failing to object to that late decision before the commission, and by further

invoking the jurisdiction of the commission by agreeing to remand the case to the commission for review of their revised plan. We conclude otherwise.

The plaintiffs took these actions, however, at a time prior to the decision in *Oyster Creek Preservation, Inc.* At the time, not anticipating the impact of *Oyster Creek Preservation, Inc.*, the plaintiffs' course of action was entirely reasonable and, in the circumstances, cannot be viewed as any kind of waiver. Indeed, for plaintiffs' counsel to have done otherwise might well be seen as professionally questionable since, until *Oyster Creek Preservation, Inc.*, the commission's approval presumably remained necessary.

In short, the instant circumstances are controlled in material respects by the reasoning of *Oyster Creek Preservation, Inc.* Plaintiffs' counsel's practice of prudent lawyering should not cause his clients to lose that to which they are procedurally, substantively, and statutorily entitled.[8]

The judgment is vacated and a new judgment shall enter approving the superseding order of conditions issued by the DEP on January 3, 2007.

*So ordered.*


GRAHAM, J. (dissenting). Had the plaintiffs not sought further review from the town's conservation commission (commission), the Department of Environmental Protection's (DEP) superseding order of conditions clearly would apply. The plaintiffs, however, chose not to pursue their right to enforce the DEP's superseding order. In voluntarily returning to the commission and continuing before it even after notice of the DEP's superseding order, the plaintiffs chose to ignore the tardiness of the commission's first decision and their right to enforce the DEP's superseding order. They opted, instead, to reinvoke the commission's jurisdiction, to submit a new plan for consideration, to cause a second public hearing and further deliberation by the commission, and for the commission to have a new twenty-one

---

[8]Deciding as we do, we have no need to address the plaintiffs' other arguments.

day period to issue a second order with findings.[1] The commission's second decision denying the variance and the order of conditions does not suffer from the same jurisdictional impediment as the first.[2] I discern no reason that we should allow the plaintiffs to ignore their rights under the DEP's superseding order, reinvoke the jurisdiction of the commission, and then ignore the commission's timely second decision. There being no serious argument that Falmouth's wetland regulations (FWR) are not more restrictive than the Wetlands Protection Act (act), G. L. c. 131, § 40, the DEP's superseding order does not trump the commission's second decision.

*Deliberation by the commission.* The plaintiffs argue that the second decision was not the result of deliberation among the commission members. "Deliberation," they point out, is defined in the open meeting statute as "a verbal exchange between a quorum of members of a governmental body attempting to arrive at a decision." G. L. c. 39, § 23A, inserted by St. 1975, c. 303, § 3.[3] They claim that although the commissioner kept the public hearing open after the first hearing on remand for the purpose of allowing the plaintiffs to file cases supporting their hardship argument, the commission promptly voted at the next hearing without further discussion. The plaintiffs ignore that the public hearing had been closed except for the supplementation

[1]The plaintiffs conceded at oral argument that they did not expressly reserve their right to argue that the first decision was procedurally flawed. Their contention that by retaining jurisdiction in the Superior Court they preserved their right to make the argument that the first decision was untimely is unsupported by authority and does not rise to the level of adequate appellate argument within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See *Murphy* v. *Planning Bd. of Hopkinton*, 70 Mass. App. Ct. 385, 399-400 (2007).

[2]The plaintiffs have not shown that the commission's administrative error in failing to attach its reasoning to the second decision is a jurisdictional error akin to an untimely decision.

The error was eventually remedied and the plaintiffs do not claim any prejudice. The plaintiffs have provided no authority for the proposition that the commission's failure to comply with § 10.05(9)(b) of the Falmouth wetland regulations (FWR) is tantamount to an untimely decision bringing it within the realm of *Oyster Creek Preservation, Inc.* v. *Conservation Commn. of Harwich*, 449 Mass. 859 (2007).

[3]We note that G. L. c. 39, § 23A, has been repealed effective July 1, 2010, by St. 2009, c. 28, § 20.

of the record, which had been accomplished before the commission's hearing on March 14, 2007. Given the lengthy discussion at the first hearing on remand, the commission's decision to close the hearing subject only to the supplementation of the record with copies of cases, and the fact that the record was supplemented nine days before the March 14th hearing, I discern no merit to the plaintiffs' argument that the commission did not "deliberate."

*The second decision.* The plaintiffs argue that the commission's second decision denying their application for a variance was arbitrary, capricious, an abuse of discretion, not based upon substantial evidence, and based on error of law. See *Dubuque* v. *Conservation Commn. of Barnstable*, 58 Mass. App. Ct. 824, 829 (2003). I disagree.

The town's by-law allows variances pursuant to FWR § 10.13(1) for those individuals who suffer a "hardship" as that term is defined in FWR § 10.04.[4] In the absence of a demonstrated hardship, therefore, the plaintiffs lack standing to obtain a variance.[5] In an effort to establish a hardship, the plaintiffs point to what they consider a legal expectation to construct a dock by virtue of their ownership of waterfront property. They claim this right dates back to colonial times when the government encouraged waterfront property owners to construct private piers and even extended private ownership to the low water mark to facilitate construction. Applying the town's

---

[4]"*Hardship* means the application of Chapter 235 of the Code of Falmouth to a particular piece of property, evaluated in its totality, owing to the unique characteristics of the property, that is unduly oppressive, arbitrary or confiscatory and would involve substantial economic loss to the Applicant because of the literal enforcement of the Bylaw provided that the Conditions and characteristics of the property are not the result of the actions of the Applicant, or owner, or their agents, predecessors, successors or assignees. No Hardship exists where there is established under the Code of Falmouth a right to transfer development rights."

[5]The plaintiffs make a circular argument that if the variance from the application of FWR § 10.16(1)(h)(2) had been granted, then the remaining sections of the town's wetland regulations would have been no more onerous than the act with regard to shellfish. They contend that the DEP's determination that there would be no adverse impacts to land containing shellfish renders the commission's decision to deny the variance arbitrary, capricious, and an abuse of discretion. That a proposal may meet less onerous provisions under the act does not render a conservation commission's decision to enforce a more restrictive local by-law arbitrary and capricious.

wetland regulations to take away this right, they argue, constitutes a "hardship."

The argument is unavailing. "There can be no doubting the proposition that property may be subject to reasonable restraints and regulation in the public interest." *Lovequist* v. *Conservation Commn. of Dennis*, 379 Mass. 7, 19 (1979). Even accepting that owners of waterfront property were encouraged in colonial times to construct private piers and docks, I do not see how that translates to a legal right to construct a dock in 2006. The plaintiffs do not suggest that when they took title to their property, docks were not subject to regulation in the public interest.

Moreover, the plaintiffs fail to demonstrate any "substantial economic loss," as the term is used within the definition of "hardship" in FWR § 10.04, that would result from literal enforcement of the by-law. Nor does their contention that their property has a two-foot-high peat shelf covered with mussels where it meets the water demonstrate an unusual characteristic. In support of their argument, the plaintiffs compared their property to that of a single abutter to the north whose property, they contend, is fronted by a sandy beach. A single comparison hardly demonstrates that the plaintiffs' property has a unique characteristic.

The commission did not err in rejecting the plaintiffs' argument that they would suffer a hardship as that term is used in the town's by-law and implementing regulations and, accordingly, did not err in denying the variance. In the absence of a hardship, the commission was without authority to issue a variance. As such, there is no need to address the plaintiffs' remaining arguments as to the denial of the variance. The plaintiffs essentially make no argument directed separately to the denial of their notice of intent, and therefore, the issue is waived. I note, however, that the plaintiffs' failure to obtain a variance, alone, is sufficient reason to deny the notice of intent as it is clear that the plaintiffs cannot comply with all the requirements of the by-law. See *FIC Homes of Blackstone, Inc.* v. *Conservation Commn. of Blackstone*, 41 Mass. App. Ct. 681, 687 (1996). The commission's second decision of denial should therefore be upheld.