MICHAEL GARRITY *vs.* CONSERVATION COMMISSION OF
HINGHAM.

Plymouth. March 6, 2012. - July 16, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Wetlands Protection Act. Municipal Corporations,* Conservation commission.
*Waiver. Zoning,* Wetlands, Conditions, Notice, Enforcement.

This court concluded that the Wetlands Protection Act, G. L. c. 131, § 40
(act), authorizes an applicant to waive the requirement that a municipal
conservation commission issue a decision on a requested order of condi-
tions within twenty-one days after it holds a public hearing on the ap-
plicant's notice of intent to perform work covered by the act, but any
waiver must be voluntary on the part of the applicant and respectful of the
act's purposes and policies, the duration of the waiver must be defined and
reasonable in length, and notice of the waiver's duration must be a matter
of public record, available to all interested persons. [783-789]
In an action in the nature of certiorari, the Superior Court judge properly
granted judgment on the pleadings in favor of the plaintiff applicant seek-
ing an order of conditions for work covered by the Wetlands Protection
Act, G. L. c. 131, § 40 (act), where the plaintiff did not waive the require-
ment that the defendant municipal conservation commission (commission)
issue a decision on the requested order of conditions within twenty-one
days after it held a public hearing on the plaintiff's notice of intent to
perform such work, in that the commission did not meet its burden of
proof that a purported waiver and agreement to an open-ended extension of
the statutory period was valid, and where the commission did not issue its
decision until twenty-two days after the close of a public hearing on the
matter [789-791]; however, the judge erred in reversing an enforcement
order issued by the commission, where the plaintiff did not meet his
burden of showing that the commission acted arbitrarily and capriciously
in exercising its discretion [791-796].

CIVIL ACTION commenced in the Superior Court Department on
June 24, 2009.

The case was heard by *Richard J. Chin,* J., on motions for
judgment on the pleadings.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Lauren C. Galvin* (*James A. Toomey* with her) for the defendant.

*Matthew Watsky* for the plaintiff.

BOTSFORD, J. The Wetlands Protection Act, G. L. c. 131, § 40 (act), requires a conservation commission to issue a decision on a requested order of conditions within twenty-one days after it holds a public hearing on the applicant's notice of intent to perform work covered by the act. A question raised in this case is whether this deadline may be waived, and if so, the permissible contours of such a waiver.[1] We conclude that an applicant seeking an order of conditions may waive the statutory restriction on the time available to the conservation commission to render its decision, but any waiver must be voluntary in fact, its duration must be defined and reasonable in length, and notice of the waiver's duration must be a matter of public record, available to all interested persons.

1. *Background.* The plaintiff, Michael Garrity, owns oceanfront property in the town of Hingham (town). In March, 2009, he filed a notice of intent (NOI or application) with the defendant, the conservation commission of Hingham (commission), pursuant to the act and the town's wetlands protection bylaw. The NOI requested an order of conditions allowing the construction of a pile-supported pier that would extend approximately 175 feet from the mean high water line in front of Garrity's house, a pile-held floating dock, and a land-based platform or deck from which the pier would extend.[2]

The commission stamped Garrity's NOI submission documents as received on March 9, 2009, and scheduled a public hearing on it for March 23, fourteen days later. The act directs that the public hearing be held within twenty-one days of a conservation commission's receipt of a completed NOI, but Garrity's representative requested a continuance of the hearing to April 6 (twenty-eight days after the submission date of March

---

[1]The case raises separate issues concerning the review and validity of an enforcement order issued by the conservation commission of Hingham (commission).

[2]This was Garrity's second notice of intent (NOI) for an order of conditions to build a pier and related structures. The commission had denied the first in 2008. In his second NOI, Garrity revised the original plans to address issues that led to denial of the first.

9), to allow time for the completion of a peer review assessment of the proposed work that the commission had requested.[3] The public hearing was held on April 6, and Garrity's representative presented the project to the commission. After hearing from the town's conservation officer and comments of several abutters, and considering several other items, the commission adjourned the public hearing.

The commission met again on April 27, 2009, twenty-one days after April 6. The members of the commission voted unanimously to deny Garrity's requested order of conditions. On April 28, twenty-two days after the public hearing closed, a written order of denial was mailed to Garrity; the order stated that the denial was based on the town's wetlands bylaw. In particular, the commission found that the work proposed could not be conditioned to meet the bylaw's performance standards designed to protect specific interests, including fisheries, storm damage prevention, pollution prevention, shellfish protection, recreation, and aesthetics.

Garrity's appeal to the Department of Environmental Protection (department) was received two days later, on April 30, 2009. In his letter of appeal, Garrity claimed that the commission had failed to act within the twenty-one day time period mandated by the act. On July 30, based on the commission's failure to act within twenty-one days, the department issued a superseding order of conditions that permitted Garrity to construct a landing platform and access stairs with dimensions of eight by eighteen feet; a fixed pier with dimensions of four by 132 feet; a "T-Head" at the end of the pier with dimensions of ten by twelve feet; a ramp of four by forty feet; and a floating dock of ten by twelve feet.[4]

Before the department issued the superseding order, the com-

---

[3]The commission requested the peer review of the project on March 11, 2009, stating, "It is the policy of the [commission] to have peer review conducted on all major projects, including docks, piers and dredging." Garrity was required to pay the fees associated with this review. The completed peer review consisted of four pages of generally positive comments about Garrity's response in the new design to each of the issues the commission had raised in connection with the first NOI Garrity had submitted in 2008. See note 2, *supra.*

[4]In allowing this project to be done, the department permitted alteration of the following coastal resource areas: eight square feet of land under the ocean,

mission issued an enforcement order to Garrity dated June 22, 2009, based on observations its members and staff made of certain structures that had been constructed on Garrity's property.[5] The enforcement order charged Garrity with four violations of the act: the construction and installation of (1) a wide stairway, (2) large deck, and (3) granite steps within a protected coastal bank without any order of conditions; and (4) the placement in and crushing of intertidal saltmarsh vegetation with stepping stones, similarly without an order of conditions. The enforcement order required Garrity to "cease and desist from any activity affecting the [b]uffer [z]one and/or resource areas." It also notified Garrity that he must submit a notice of intent at least ten days prior to the commission's scheduled meeting on August 10, 2009, to begin rectifying the violations.

Garrity commenced this action in the nature of certiorari on June 24, 2009, in the Superior Court, before receiving the department's superseding order of conditions; he amended the complaint after the department's superseding order was issued. The commission filed a copy of the record of the proceedings before it as its answer on November 17. Thereafter, Garrity and the commission filed cross motions for judgment on the pleadings pursuant to Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974). The commission argued that Garrity had waived the twenty-one day deadline for issuance of a decision on Garrity's NOI after the public hearing closed, and therefore its denial of the NOI should govern. A Superior Court judge heard the motions and issued a decision on December 13, 2010. He concluded that Garrity's purported waiver of the twenty-one day requirement for the commission's issuance of its decision was ineffective, the decision was therefore not timely because it was not mailed within twenty-one days of the public hearing, and the superseding order of conditions issued by the department applied in its place. With respect to the commission's enforcement order,

6.4 square feet of coastal beaches, 209 square feet of coastal banks, 1.6 square feet of salt marsh, and 209 square feet of land subject to coastal storm flowage. The department also noted that "the project is located within several wetland resource areas" and determined that the site was significant to a number of statutory interests.

[5] At a public meeting on June 29, the town's conservation officer reviewed the June 22 enforcement order, and the commission formally voted to ratify it.

which Garrity separately challenged in his complaint, the judge concluded that the record contained insufficient evidence to support the order, and reversed it. The commission filed a timely appeal, and we transferred the case from the Appeals Court on our own motion.

2. *Discussion.* The commission argues that the judge erred in both ruling that Garrity's waiver of the act's twenty-one day limitation for issuance of its decision was invalid and concluding that the commission's separate enforcement order lacked evidentiary support. We consider the two points separately.

a. *Waiver.* Under the act, no person may "remove, fill, dredge or alter" wetlands and other types of property described in the act that border bodies of water without applying for and receiving an order of conditions from the local conservation commission in the first instance. G. L. c. 131, § 40, first par. The act sets out in some detail the application process for an order of conditions, the review process to be followed by a conservation commission, the time frames in which the conservation commission must act, and the consequences of a failure to act in a timely manner. Of specific relevance here is that the act directs a conservation commission to hold a public hearing on a proposed project within twenty-one days of the commission's receipt of an applicant's NOI concerning the project, *id.*, seventeenth par., and further mandates that the conservation commission issue a written order on the proposed project within twenty-one days of the public hearing. *Id.*, eighteenth par. If the commission fails to do so, the applicant (as well as any other interested party described in the act) may request from the department a superseding order of conditions.[6] *Id.*, nineteenth par.

The commission challenges the judge's determination that

---

[6] In relevant part, the act provides:

"[1] No person shall remove, fill, dredge or alter any bank, . . . coastal wetland, beach, dune, flat, marsh, meadow or swamp bordering on the ocean . . . or any land subject to tidal action, coastal storm flowage, or flooding, other than in the course of maintaining, repairing or replacing, but not substantially changing or enlarging, an existing and lawfully located structure . . . without filing written notice of his intention to so remove, fill, dredge or alter . . . and without receiving and complying with an order of conditions and provided all appeal periods have elapsed. Said notice shall be filed by delivery in hand to

Garrity did not validly waive the requirement that the commission provide notice of its decision within twenty-one days after the public hearing (twenty-one day decision deadline). Its argument has four parts: (1) the act authorizes waiver and extension of the twenty-one day decision deadline; (2) Garrity, through his representative, validly waived the deadline in this case; (3) the commission's denial of Garrity's NOI therefore was entitled to enforcement, rendering the superseding order of conditions superfluous; and (4) in any event, it would be inequitable to treat the waiver as invalid when the commission reasonably relied on its existence and acted accordingly. Garrity takes the opposite tack, arguing that the act forbids any waiver by any party of its time requirements for a commission decision,[7] and

the conservation commission . . . or by certified mail, return receipt requested, to said commission . . . .

"[17] The conservation commission . . . receiving notice under this section shall hold a public hearing on the proposed activity within twenty-one days of the receipt of said notice. . . .

"[18] If after said hearing the conservation commission . . . determine[s] that the area on which the proposed work is to be done is significant to . . . flood control, to storm damage prevention, to prevention of pollution, [or] to protection of land containing shellfish . . . such conservation commission . . . shall by written order within twenty-one days of such hearing impose such conditions as will contribute to the protection of the interests described herein, and all work shall be done in accordance therewith. . . .

"[19] If a conservation commission has failed to hold a hearing within the twenty-one day period as required, or if a commission, after holding such a hearing has failed within twenty-one days therefrom to issue an order, . . . or where an order does issue from said commission, the applicant, any person aggrieved by said commission's order or failure to act, or any [abutter of] the land upon which the proposed work is to be done, or any ten residents . . . may . . . request the department of environmental protection to determine whether the area on which the proposed work is to be done is significant . . . . Upon receipt of such request the department shall make the determination requested and shall by written order issued within seventy days of receipt of such request . . . impose such conditions as will contribute to the protection of the interests described herein . . . . Such order shall supersede the prior order of the conservation commission . . . and all work shall be done in accordance therewith . . . ."

G. L. c. 131, § 40.

[7] Garrity's contention that the act by its terms does not permit a waiver of

relies on this court's decision in *Oyster Creek Preservation, Inc.* v. *Conservation Comm'n of Harwich*, 449 Mass. 859, 866 (2007) (*Oyster Creek*), in support of the claim. Garrity contends also that even if there is no categorical prohibition against waiving the twenty-one day decision deadline, he did not voluntarily agree to do so in this case, and therefore his purported waiver was invalid; and in any event, the record shows that he withdrew his waiver before the commission voted to deny his application.

1. In resolving the question of statutory construction presented — whether the act permits an applicant to waive the twenty-one day decision deadline — "we interpret the statutory language 'according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.' " *Boston Police Patrolmen's Ass'n* v. *Boston*, 435 Mass. 718, 719-720 (2002), quoting *Champagne* v. *Champagne*, 429 Mass. 324, 326 (1999).

"A statutory right . . . may be waived when the waiver would not frustrate the public policies of the statute." *Canal Elec. Co.* v. *Westinghouse Elec. Corp.*, 406 Mass. 369, 377 (1990). At the same time, "[a] statutory right may not be disclaimed if the waiver could 'do violence to the public policy underlying the legislative enactment.' " *Id.* at 378, quoting *Spence* v. *Reeder*, 382 Mass. 398, 413 (1981). The broad purpose of the act is to preserve and protect coastal and other wetlands bordering rivers and other bodies of water. See *Southern New England Conference Ass'n of Seventh-Day Adventists* v. *Burlington*, 21 Mass. App. Ct. 701, 706 (1986). See also *Golden* v. *Selectmen of Falmouth*, 358 Mass. 519, 526 (1970). Both the department and a

its time requirements appears to be limited to the act's requirement that a commission render a decision on an application for an order of conditions within twenty-one days after the public hearing (twenty-one day decision deadline); he does not claim that the commission was without statutory authority to grant his request to delay the public hearing beyond twenty-one days after he filed his NOI, even though the act prescribes that the public hearing be held within that twenty-one day period. We therefore focus specifically on the twenty-one day decision deadline. Our conclusion that the act is reasonably interpreted to permit a voluntary, reasonable waiver of this time requirement, however, holds true as well for the other time requirements in the statute.

local conservation commission may regulate activities in wetlands "to protect the private or public water supply; to protect the ground water; to provide flood control; to prevent storm damage; to prevent pollution; to protect land containing shellfish; to protect wildlife habitat; and to protect the fisheries." G. L. c. 131, § 40, eighteenth par. The Legislature placed the jurisdiction in local conservation commissions to perform the initial review of wetlands projects "for the familiar purposes of bringing local knowledge to bear on local conditions and reducing the administrative burden on [the department]" (citations omitted). *Hamilton* v. *Conservation Comm'n of Orleans*, 12 Mass. App. Ct. 359, 368 (1981). Construing the act to permit an applicant to waive the twenty-one day decision deadline with respect to a local conservation commission's review of a proposed project does not interfere with the act's purposes, but may be seen to advance them by providing the commission with sufficient time to conduct a careful, locally informed evaluation of the project and, where appropriate, to prescribe suitable protective conditions for it.[8]

There are statutes that contain express waiver provisions for the time limitations those statutes otherwise impose on regulatory actions.[9] However, we do not read these enactments as reflecting a general legislative intent to bar any waiver of any statutory time limitation unless expressly authorized in the

---

[8]As the commission points out, the members of local conservation commissions are generally volunteers with other, full-time employment commitments. Depending on the scope and complexity of a proposed project, it may well be unrealistic to expect such individuals to evaluate the project's potential impact on the natural resources and interests the act seeks to protect within twenty-one days after the close of the public hearing.

In addition to protecting wetlands, the twenty-one day decision deadline and the other time requirements included in the act reflect a legislative purpose of not unduly delaying a property owner's ability to develop his property. Any waiver of the twenty-one day decision deadline must be reasonable in duration in order to respect this additional statutory purpose. We discuss this point more fully, *infra*.

[9]See, e.g., G. L. c. 41, § 81U, fifth par. (providing for waiver of statutory ninety-day limit on municipal review of definitive subdivision control plan to such further time "as may be agreed upon at the written request of the applicant"); G. L. c. 43D, § 9 (providing for waiver of 180-day municipal review period in specified instances as part of statutory scheme providing for expedited permitting for economic development sites).

words of the statute itself. Rather, as stated, the critical consideration in deciding if a particular statute is reasonably interpreted to permit a waiver is whether doing so would frustrate the purposes and policies that statute is designed to advance. *Canal Elec. Co.* v. *Westinghouse Elec. Corp.*, 406 Mass. at 377.[10] Because a reasonable waiver of the act's strict twenty-one day decision deadline by an applicant for an order of conditions does not "do violence," see *id.* at 378, to the act's purposes and indeed may further them, we interpret the act to authorize such an applicant to agree to a waiver — and thereby extension — of that deadline. We add this proviso, however: any waiver must be voluntary on the part of the applicant and respectful of the act's purposes and policies.[11]

The proviso bears emphasis. By its terms, the act's twenty-one

[10]See *United States* v. *Mezzanatto*, 513 U.S. 196, 200-201 (1995) (discussion of United States Supreme Court's approach to concept of waiver in construing Federal statutes: "Rather than deeming waiver presumptively unavailable absent some sort of express enabling clause, we instead have adhered to the opposite presumption. . . . [A]bsent some affirmative indication of Congress' intent to preclude waiver, we have presumed that statutory provisions are subject to waiver by voluntary agreement of the parties").

[11]Garrity reads our decision in *Oyster Creek Preservation, Inc.* v. *Conservation Comm'n of Harwich*, 449 Mass. 859, 866 (2007) (*Oyster Creek*), as establishing that the twenty-one day decision deadline is mandatory and not subject to waiver. Garrity is mistaken. There was no issue of waiver in *Oyster Creek*. Rather, the defendant conservation commission there unilaterally reopened a public hearing that it previously had voted to close, and it issued its decision denying the plaintiff's application for an order of conditions within twenty-one days of the reopened public hearing but twenty-three or twenty-four days after the original closing date of that hearing. We held that the conservation commission had no authority to reopen a closed public hearing on its own motion and, therefore, had failed to issue a timely decision, with the result that the department's superseding order of conditions in that case became the governing order. *Id.* at 860, 865-866. Because no question of waiver was raised in *Oyster Creek*, our decision cannot be read as interpreting the act to preclude waiver.

Garrity relies also on the Appeals Court's decision in *Regan* v. *Conservation Comm'n of Falmouth*, 77 Mass. App. Ct. 485 (2010) (*Regan*), for the same proposition that no waiver of the act's twenty-one day decision deadline is possible. In the *Regan* case, however, the court appears to have concluded that there was no valid waiver because of the particular timing of events in that case in relation to our decision in *Oyster Creek*. See *id.* at 490. To the extent the Appeals Court in *Regan* suggested that any waiver of the time requirements in the act is categorically impossible, for the reasons stated *supra*, we disagree.

day decision deadline confers a right on an applicant to a prompt ruling from a conservation commission within a defined time frame. It is black letter law that to be valid, a waiver of a right must be voluntary as well as intentional. See *Roseman* v. *Day*, 345 Mass. 93, 99 (1962) (waiver in civil context). See also *Attorney Gen.* v. *Industrial Nat'l Bank*, 380 Mass. 533, 536 n.4 (1980), quoting with approval *Buffum* v. *Chase Nat'l Bank*, 192 F.2d 58, 60-61 (7th Cir. 1951), cert. denied, 342 U.S. 944 (1952) (same). Cf., e.g., *Commonwealth* v. *Anderson*, 448 Mass. 548, 554 (2007) (waiver by criminal defendant of constitutional right). Beyond honoring this fundamental character of waiver, the need to respect the purposes and policies of the act also requires that any waiver and resulting deadline extension agreed to by an applicant be of reasonable and definite duration, in writing, and made a matter of public record. The twenty-one day decision deadline bespeaks a legislative purpose of ensuring that applications for orders of conditions be considered and ruled on expeditiously.[12] Furthermore, we understand the specificity of the time limitation — precisely twenty-one days — to reflect at least in part a legislative concern that the applicant as well as abutters to the applicant's property and other interested persons be in a position to identify and measure the very short time period available to them to act if they wish to seek relief from inaction or action by a conservation commission.[13] To protect against frustrating these purposes, any extension of time for the commission to review and act on an NOI after the close of a public hearing must be for an objectively reasonable duration in the particular circumstances. Further, public notice of the extension must be provided in a manner that is reasonably accessible to interested

[12]The existence and importance of this purpose are supported as well by the other specific time limitations that the act imposes on decisions and actions of local conservation commissions, see G. L. c. 131, § 40, third, seventeenth, and eighteenth pars.; and the specific time restrictions imposed on the department to consider an appeal from a local conservation commission's action or failure to act. See *id.*, nineteenth par.

[13]The act requires an applicant to provide written notice to all abutters of the applicant's property when the applicant files an NOI. G. L. c. 131, § 40, second par. It further provides that any abutter, other person aggrieved by a conservation commission's order of conditions or failure timely to act, or ten municipal residents may appeal to the department within ten days of the commission's action or failure to act. See *id.*, nineteenth par.

persons; if the conservation commission does not have an established procedure for giving public notice of its actions and decisions, filing the waiver and extension with the town clerk would appear to be a reasonable alternative. Cf. G. L. c. 41, § 81U, fifth par. (requiring notice of any agreed-on extension of statutory time requirement for planning board's review of definitive subdivision control plan to be filed with city of town clerk).[14]

2. While we interpret the act not to prohibit an applicant from waiving and thereby extending the twenty-one day decision deadline, we agree with the judge that Garrity's purported waiver and agreement to an open-ended extension of the period in which the commission might review and render a decision on his NOI was not valid.

We begin with a recitation of additional facts. The commission has a set of guidelines for NOI submissions that features a checklist of requirements and forms, including a waiver form entitled "Hingham Conservation Commission Waiver of 21-Day Deadline." That form states: "Due to the increasing number of public filings and the complexity of projects under review, the Hingham Conservation Commission hereby request[s] the below listed applicant to waive the mandated twenty-one (21) day decision deadline in order that each project receive a fair and thorough review." The checklist states at its top, "THE HINGHAM CONSERVATION COMMISSION WILL NOT ACCEPT INCOMPLETE FILINGS. You must check off all items applicable to your project, sign & return to [the commission] with the completed [NOI]."[15] The checklist then sets out the required elements of a properly submitted NOI, including plans, maps, and fees, and lists items that must be submitted to the commission and items required to be submitted to the department. Included as item "f" in the list of items to be submitted to the commission is the statement, "I have read and signed the [commission's] *Waiver of 21-Day Deadline*" (emphasis in original). Garrity's NOI submission to the commission contained a

[14]These same requirements of voluntariness, definiteness, and public notice also would apply to any extension of an initial extension of time.

[15]The checklist reinforces this message at the bottom of the page: "Please note that unless all required components are included, your application *will not be considered complete*" (emphasis in original).

completed checklist, and on it, item "f" was checked off and the form signed by Garrity's representative. The NOI submission included also a completed waiver form that states, "Michael Garrity (applicant) hereby waives the mandated twenty-one (21) day decision deadline for the project entitled Residential Pier & Float at . . . (address)."[16] The waiver form has no designated line or space for a signature.

The commission's checklist for applicants seeking to file an NOI, in our view, would reasonably be understood by an applicant to require submission of a signed waiver form as part of the application. Accordingly, the commission's claim that Garrity's submission of the form was voluntary because the form itself states that the commission "requests" the waiver must be rejected. The burden of proving waiver was on the commission. See *Attorney Gen.* v. *Industrial Nat'l Bank*, 380 Mass. at 536 n.4, 537. While the commission is correct that Garrity knew some checklist items were not relevant to his project based on his marking them as not applicable, that is beside the point. The question here is whether the pertinent forms (waiver form and checklist), viewed together, demonstrate a clear waiver of his rights by Garrity. See *Glynn* v. *Gloucester*, 9 Mass. App. Ct. 454, 462 (1980). We conclude that they do not. On this record, the commission has not met its burden of proof as a matter of law.

3. Because there was no valid waiver by Garrity of the act's twenty-one day decision deadline, that period began to run after the close of the public hearing on April 6, 2009. The commission did not issue its decision until twenty-two days thereafter.

---

[16]Garrity's completed waiver form read as follows:

"Due to the increasing number of public filings and the complexity of projects under review, the [commission] hereby request[s] the below listed applicant waive the mandated twenty-one (21) day decision deadline in order that each project receive a fair and thorough review.

"*Michael Garrity* (applicant) hereby waives the mandated twenty-one (21) day decision deadline for the project entitled *Residential Pier & Float* at . . . (address).

"A complete application for this project was submitted on *March 9, 2009*, and it is my understanding that it will be scheduled for a PUBLIC HEARING at the next available open meeting of the [commission]."

It follows, therefore, that the "late-issued [order of conditions] of the commission is without effect." *Oyster Creek*, 449 Mass. at 865.[17] The superseding order of conditions issued by the department governs, even if the town's bylaws are more restrictive. *Id.* at 866.

b. *Enforcement order.* The commission issued an enforcement order to Garrity on June 22, 2009, approximately two months after its denial of Garrity's application for an order of conditions, and one month before the department issued its superseding order. The enforcement order is entered on a departmental form, and it contains a description of four types of activity[18] that the commission found to have been conducted in a protected area or buffer zone without Garrity's having obtained an order of conditions or a "[n]egative [d]etermination"[19] from the commission. It orders Garrity, as the property owner, to cease and desist any further activity affecting a buffer zone or protected resource areas, to file a restoration plan for the areas subject to damage, and to file as well as an NOI covering removal of the offending structures and any plans proposed to replace them. In his decision, the judge ruled that reversal of the enforcement order was required "because the alleged violations are not supported by substantial evidence in the administrative record." This ruling was in error.

Because the commission's decisions and orders are not subject to judicial review under G. L. c. 30A, review of its enforcement

---

[17]The commission's final contention on the waiver issue — that the court should provide an equitable remedy based on the commission's reasonable reliance on the purported waiver — fails. The commission's reliance on what in effect was a mandatory waiver of an applicant's statutory right to a prompt decision was not reasonable. In sum, the commission had no right to insist on Garrity's waiver, and it cannot claim reasonable reliance on the waiver it obtained as a result of that insistence.

[18]The activities listed in the enforcement order are "[1] construction of a wide stairway on a coastal bank[;] [2] construction of an approximately [thirty-eight feet by sixteen feet] deck on a coastal bank and within a velocity zone VE [thirty] storm surge area[;] [3] covering and crushing intertidal salt-marsh vegetation with stepping stones[; and] [4] installation of granite steps on the coastal bank."

[19]A "[n]egative [d]etermination" refers to a determination by a conservation commission, in response to a written request of a person, that the act does not apply to a particular parcel of land or work on that land. See G. L. c. 131, § 40, third par.

order is available only through an action in the nature of certiorari pursuant to G. L. c. 249, § 4, the statute under which Garrity filed his complaint. In certiorari cases, "the standard of review may vary according to the nature of the action for which review is sought." *Forsyth Sch. for Dental Hygienists* v. *Board of Registration in Dentistry*, 404 Mass. 211, 217 (1989) (*Forsyth*). Where the action being reviewed is not a decision made in an adjudicatory proceeding and where the action entails matters committed to or implicating a board's exercise of administrative discretion, the court applies the "arbitrary and capricious" standard. See *id.* at 217-218 & n.2.

The commission's enforcement order is not the product of an adjudicatory proceeding involving the presentation of evidence. Rather, the order constitutes discretionary action by the commission pursuant to its undisputed authority to enforce the act within the town. Cf. *Fafard* v. *Conservation Comm'n of Reading*, 41 Mass. App. Ct. 565, 567-568 (1996) (applying arbitrary and capricious standard to review of conservation commission's denial of order of conditions); *T.D.J. Dev. Corp.* v. *Conservation Comm'n of N. Andover*, 36 Mass. App. Ct. 124, 128-129 (1994) (*T.D.J. Dev. Corp.*) (applying arbitrary and capricious standard in reviewing conservation commission's imposition of conditions on plaintiff's wetlands project). Accordingly, our task is not to determine whether the record contains substantial evidence to support the commission's action but, rather, to decide whether the commission exercised its discretion arbitrarily and capriciously. *Forsyth*, 404 Mass. at 217. See *T.D.J. Dev. Corp., supra* at 128. "A decision is not arbitrary and capricious unless there is no ground which 'reasonable [persons] might deem proper' to support it." *Id.*, quoting *Cotter* v. *Chelsea*, 329 Mass. 314, 318 (1952). See *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555, 560 (1954) (court reviews to determine whether board has engaged in "unreasonable" or "whimsical" exercise of its discretion). Garrity bears the burden of establishing that the commission acted arbitrarily and capriciously. See *Forsyth, supra* at 218; *T.D.J. Dev. Corp., supra* at 128-129.

On the record presented, Garrity has not sustained this burden. With respect to the so-called replacement stairway, Garrity asserts that the commission did not have jurisdiction because the

work was only to replace the existing stairway using preexisting footing. See G. L. c. 131, § 40, first par. ("No person shall remove, fill, dredge or alter any bank . . . *other than in the course of maintaining, repairing or replacing*, but not substantially changing or enlarging, an existing and lawfully located structure . . . without filing written notice of his intention [to do such work]" [emphasis supplied]). However, under the department's regulations implementing the act, the proponent of any project taking place in a protected area such as the coastal bank on which the stairway is located "has the burden of establishing that the work is not subject to [r]egulation under [] G. L. c. 131, § 40." 310 Code Mass. Regs. § 10.02(2)(a)(2) (2008).[20] Contrary to the tenor of Garrity's argument, it was up to him to establish that the replacement stairway was not a substantial enlargement of the preexisting stairway. He does not do so simply by asserting that the work was done with the consent of the building inspector,[21] and claiming that "the few photographs in the record did not provide the trial court with a

---

[20]Title 310 Code Mass. Regs. § 10.02(2)(a)(2) (2008) reads in pertinent part:

"Any Activity proposed or undertaken within an area specified in 310 [Code Mass. Regs. §] 10.02(1) [defining areas subject to protection, including any bank or coastal wetland bordering on the ocean], which will remove, fill, dredge or alter that area, is subject to [r]egulation under []G. L. c. 131, § 40[,] and requires the filing of a [NOI] *except*: . . .

"2. *[A]ctivities conducted to maintain, repair or replace, but not substantially change or enlarge an existing and lawfully located structure* or facility used in the service of the public and used to provide electric, gas, water, telephone, telegraph and other communication services, provided said work utilizes the best practical measures to avoid or minimize impacts to wetland resource areas outside the footprint of said structure or facility. *A project proponent claiming that work to remove, fill, dredge or alter an area specified in 310 [Code Mass. Regs. §] 10.02(1) does not require the filing of a [NOI] has the burden of establishing that the work is not subject to [r]egulation under []* G. L. c. 131, § 40" (emphasis supplied).

[21]The record reference that Garrity supplies in his brief in support of this assertion is his counsel's letter to the commission responding to the enforcement order. The record itself does not appear to contain any letter, ruling, or other document directly reflecting the building inspector's approval of the new stairway. Even if it did, that would not deprive the commission of jurisdiction over the project.

sufficient basis to determine that the stairway was widened . . . or that it was not rebuilt on its preexisting footings with no alteration to the coastal bank."[22]

Turning to the deck, again we conclude that Garrity has not met his burden of proving the commission's order was arbitrary and capricious. Garrity contends the commission was without authority to enforce any restrictions because of the department's superseding order of conditions, which specifically approved the construction of a deck. If the deck's dimensions and construction were in accordance with the authorization supplied by the superseding order, we would agree with Garrity, even though the commission's enforcement order predated the department's superseding order by approximately one month; the timing difference suggests there would be a violation, but it would be of extremely fleeting duration and as a practical matter not worth pursuing. But the enforcement order at issue here states that the deck as built has dimensions of thirty-eight feet by sixteen feet, while the department's superseding order of conditions permitted construction of a deck measuring only eight feet by eighteen feet. In challenging the order, it was up to Garrity to establish that his deck complied with the superseding order's requirements; he has not done so. The record contains insufficient information to determine the exact dimensions of the deck, but the photographs suggest the commission reasonably could have concluded that, as built, the deck was larger than authorized by the department.[23]

The final alleged violation included in the enforcement order

[22]The photographs in the record to which Garrity refers include one that indicates it was taken on June 2 or 7, 2009, and six that indicate they were taken in May, 2008. None of these photographs focuses specifically on the stairway, and it is difficult to compare them. However, to our untrained eyes, the stairway pictured in the 2009 photograph appears to be wider than the stairway in the 2008 photographs. In any event, we clearly are not in a position to say, based on this evidence, that the commission could not reasonably come to a conclusion that the new stairway represented a substantially enlarged replacement of the previous stairway.

[23]The site plan indicates that the deck was to be built at eight feet deep and eighteen feet wide. In that plan as illustrated, the deck does not reach the stone revetment. Yet in the relevant photograph in the record, the deck appears to be built up to the revetment. Unless the scale of the drawing is incorrect or the location of the revetment is not accurate, the commission could have found that the deck was built larger than approved. The distance from the

relates to granite slabs or steps that Garrity installed on what had been lawn.[24] Garrity claims the commission has no jurisdiction over the granite steps because their installation represents the type of "minor activity" that is excluded from commission regulation under the department's regulations. See 310 Code Mass. Regs. § 10.02(2)(b)(1) (2008).[25] The argument fails.

A determination of the exact location of the granite steps is

edge of the proposed deck to the revetment in the drawing is approximately eight feet, a distance approximately equal to the proposed depth, which could make it sixteen feet deep, as the commission detailed in the enforcement order.

[24]The third of the four violations of the act cited by the commission in its enforcement order concerned stepping stones allegedly placed on intertidal saltmarsh vegetation. Garrity argues that this aspect of the enforcement order is moot because the stepping stones have been removed, with no apparent damage to the vegetation. The commission does not appear to dispute that the stones have been removed and makes no argument concerning continuing damage to the saltmarsh vegetation. Given the failure of both parties adequately to explain what, if anything, remains in dispute concerning the stepping stones, we do not discuss the issue further. The question of mootness is to be resolved by the parties on remand.

[25]Title 310 Code Mass. Regs. § 10.02(b) (2008) reads in pertinent part:

"(b) Any activity other than minor activities identified in [these regulations] proposed or undertaken within . . . the [b]uffer [z]one . . . which, in the [judgment] of the issuing authority, will alter an Area Subject to Protection Under [] G. L. c. 131, § 40[,] is subject to regulation . . . and requires the filing of a [NOI]. . . .

"1. Minor activities within the buffer zone and outside any areas specified in 310 [Code Mass. Regs. §] 10.02(1)(a) through (e) are not subject to regulation under [] G. L. c. 131, § 40:

"a. Unpaved pedestrian walkways for private use;

"b. Fencing, provided it will not constitute a barrier to wildlife movement; stonewalls; stacks of cordwood;

"c. Vista pruning, provided the activity is located more than 50 feet from the mean annual high water line within a riverfront area or from bordering vegetated wetland, whichever is farther . . . ;

"d. Plantings of native species of trees, shrubs, or groundcover, but excluding turf lawns;

"e. The conversion of lawn to uses accessory to residential structures such as decks, sheds, patios, and pools, provided the activity is located more than 50 feet from the mean annual high-water line within the riverfront area or from bordering vegetated wetland, whichever is farther, and erosion and sedimentation controls are implemented during

necessary to evaluate Garrity's jurisdictional claim here. Garrity does not deny explicitly that the granite steps may have been installed within a coastal bank, but we cannot tell from any plan in the record whether the granite steps lie within the coastal bank or within the coastal bank buffer zone, or both. The former requires the filing of an NOI. See 310 Code Mass. Regs. § 10.02(2)(a). The latter *may* require the filing of an NOI if the activity is not exempted and a conservation commission in its discretion decides to require a filing. See 310 Code Mass. Regs. § 10.02(2)(b).

Garrity is correct that certain "minor activities" within a buffer zone are exempted from the commission's review. See note 25, *supra*. But even assuming that the steps are wholly within the buffer zone, the department's regulations exempt a minor "conversion of lawn to uses accessory to residential structures such as decks, sheds, patios, and pools, provided the activity is located *more than [fifty] feet from . . . [a] bordering vegetated wetland*" (emphasis supplied). 310 Code Mass. Regs. § 10.02(2)(b)(1)(e). Although granite steps could perhaps be compared to a deck or patio, Garrity has not produced any evidence to show that they were at least fifty feet from the bordering vegetated wetland (i.e., the coastal bank) as is necessary for the exemption to apply. See *id.* In the circumstances, he thus failed to prove that the commission acted arbitrarily and capriciously in its determination that an order of conditions was required to install the granite steps.[26]

3. *Conclusion.* For the reasons we have discussed, the commission is not entitled to enforce its order of conditions issued April 28, 2009; rather, Garrity is entitled to proceed under the

---

construction. The conversion of such uses accessory to existing single family houses to lawn is also allowed . . . ."

[26]It appears from the record that the granite steps have been installed near the top of a steep bank. If so, it would seem that the commission permissibly could determine that the impact of granite steps was significant enough to fall within its authority to review the project even if the steps were located entirely in the buffer zone and beyond the coastal bank itself. See 310 Code Mass. Regs. § 10.53(1) (2005) ("The issuing authority may consider the characteristics of the buffer zone, *such as the presence of steep slopes*, that may increase the potential for adverse impacts on resource areas" [emphasis supplied]).

superseding order of conditions issued by the department. The commission's enforcement order dated June 22, 2009, however, is valid and entitled to be enforced with respect to the stairway, the deck, and the granite steps. On remand to the Superior Court, it will be necessary for the parties to resolve whether the aspect of the enforcement order concerned with the stepping stones is moot.

The judgment of the Superior Court is affirmed with respect to the allowance of Garrity's motion for judgment on the pleadings concerning the commission's order of conditions. The judgment is reversed with respect to the reversal of the commission's enforcement order, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*