NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1186

JEFFREY A. KING & another[1]

vs.

CONSERVATION COMMISSION OF HARWICH
(and a consolidated case[2]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs appeal from two Superior Court judgments that affirmed separate orders of the conservation commission of Harwich (commission) concerning the plaintiffs' violations of the town of Harwich's wetlands protection bylaw (bylaw) on the plaintiffs' property. The first order found that the plaintiffs had unlawfully constructed an addition and porch within fifty feet of a wetland, and it required them to remove those structures. The second order denied the plaintiffs' application

_____

[1] James M. Kelly.

[2] Jeffrey A. King & another vs. Conservation Commission of Harwich.

for what was in effect a variance to allow the structures to remain.  We affirm the judgments upholding the orders.

Background.  We recite the facts as they appear in the records of the two commission proceedings, as filed by the commission in response to the Superior Court complaints.  We reserve certain details for later discussion.

1.  Enforcement proceeding.  In May 2016, the commission's administrator met with one of the plaintiffs at the property and found that the plaintiffs, without a permit, had constructed a porch and addition within the fifty-foot "no-disturb zone" that section 310-2.A of the bylaw and section 1.04(3) of the commission's wetland protection regulations (regulations) establish around wetlands in Harwich.[3]  The administrator issued an order directing the plaintiffs or their representative to appear at a show-cause hearing before the commission to discuss the matter.  At that hearing, the plaintiffs were represented by Arthur Lafranchise, a friend who had a small financial interest in the property.  Lafranchise acknowledged that the construction had occurred without a permit.  The hearing was continued to a

---

[3] The administrator also found that the construction violated G. L. c. 131, § 40, the State wetlands protection act (WPA).  The ensuing commission proceedings thus involved the enforcement of the WPA as well as the town bylaw.  We need not discuss the WPA aspect of the proceedings except when relevant to specific issues the plaintiffs raise on appeal.

future commission meeting to allow for submission of additional information.

When the hearing resumed in July 2016, the commission had before it a 2016 plan, and other materials prepared for the plaintiffs, showing the new porch and a ten-foot by twelve-foot addition as entirely within a line fifty feet from the edge of the wetland (i.e., entirely within the no-disturb zone). Lafranchise argued that, rather than requiring removal of the new structures, the commission should impose a significant fine. The commission voted to find the plaintiffs in violation of the bylaw and to require the structures' removal. In its written decision, the commission further found that the plaintiffs' new porch was, at its closest point, only nine feet from the edge of the wetland.

The plaintiffs sought certiorari review in Superior Court. The commission answered and counterclaimed for enforcement of its order. The plaintiffs moved to dismiss the counterclaims on the ground that the commission lacked standing to seek enforcement of its order; a judge (first judge) denied that motion. On the parties' cross motions for judgment on the pleadings, the first judge ordered judgment affirming the commission's decision and, on the commission's counterclaims,

3

requiring the plaintiffs to remove the structures and restore the area to its previous condition.  The plaintiffs appealed.

2.  <u>Variance proceeding</u>.  On May 4, 2017, while the first Superior Court case was pending, the plaintiffs filed with the commission an after-the-fact notice of intent, which included an application for a variance from the no-disturb-zone bylaw, to allow the structures to remain in place.  The plaintiffs' filing included a written waiver of the statutory requirement for a hearing within twenty-one days of their application.  See G. L. c. 131, § 40, seventeenth par.  The waiver was signed by the plaintiffs' new representative, Paul Shea.  The commission began its hearing on June 7, 2017, continued it to and completed it on June 21, 2017, and thereafter timely issued a decision denying the variance request.

The plaintiffs then commenced a second Superior Court action, seeking certiorari review of the commission's variance decision.  On the parties' cross motions for judgment on the pleadings, a judge (second judge) affirmed the decision.  The plaintiffs again appealed, and their two appeals were consolidated in this court.

Discussion.  We review the commission's enforcement order to determine if it was arbitrary and capricious.[4]  See Garrity v. Conservation Comm'n of Hingham, 462 Mass. 779, 792 (2012).  We will review the commission's variance decision as we would a wetlands permit decision; such "review is limited at most to whether the commission's decision is supported by substantial evidence in the administrative record . . . [or] arbitrary and capricious, and whether the commission committed an abuse of discretion or other error of law."  Delapa v. Conservation Comm'n of Falmouth, 93 Mass. App. Ct. 729, 733-734 (2018).  In a certiorari case, "[b]ecause we are reviewing the same record of [commission] proceedings as was before the Superior Court, we review the record . . . without giving the view of the Superior Court judge any special weight" (quotation and citation omitted).  P.J. Keating Co. v. Acushnet, 104 Mass. App. Ct. 65, 69-70 (2024).

_____

[4] We need not determine whether the plaintiffs are correct in arguing, that the enforcement order must also be supported by substantial evidence, or that, to obtain a judicial enforcement order, the commission must prove the existence of a violation. See Fafard v. Conservation Comm'n of Reading, 41 Mass. App. Ct. 565, 567-568 (1996); Bourne v. Austin, 19 Mass. App. Ct. 738, 742 (1985), citing Brotherhood of Alpha Upsilon, Inc. v. Zoning Bd. of Appeals of Bridgewater, 15 Mass. App. Ct. 991, 992 (1983).  The commission's enforcement order and its filings in Superior Court meet those standards in any event.

1.  Evidence supporting enforcement order.  The plaintiffs first argue that there is insufficient evidence in the record to support the commission's enforcement order.  Because the plaintiffs do not specify precisely what evidence is lacking, we will assume their claim is that there was insufficient evidence that the new construction occurred in the fifty-foot no-disturb zone.  We are not persuaded.

The 2016 plan and related materials, prepared for the plaintiffs and before the commission in the enforcement proceeding, plainly showed that the new structures were less than fifty feet from the edge of the wetland.  Although this evidence was sufficient, the record also shows that the commission's administrator had personally visited the site with one of the plaintiffs; the administrator described for the commission the violation she observed, and a commission member visited the site several times and agreed with the administrator's assessment.  Notably, the plaintiffs' representative, Lafranchise, agreed that the work had been done without a permit and did not contest that the work was within the no-disturb zone; he argued only that, rather than requiring

6

removal of the structures, the commission should impose a significant fine.[5]

2. Salt marsh. The plaintiffs next argue that there was no evidence to support the commission's statement in its enforcement order that one part of the new porch was only nine feet from the edge of the "wetland (Salt Marsh)." Section 310-2.A of the bylaw defines the no-disturb zone as the zone fifty feet landward of "an abutting resource area," which section 1.04(3) of the regulations further describes as including, among other things, "any fresh water wetland" and any "marsh." The area where the construction occurred is shown on the 2016 plan as lying within a line labeled "50' from edge [of] wetland." Whether it is a freshwater wetland or a salt marsh makes no difference here. The plaintiffs' argument therefore does not entitle them to relief.[6]

3. "Alteration" of wetland resource area. The plaintiffs challenge the enforcement order on the ground that there was no evidence their construction activity produced any "alteration"

---

[5] Lafranchise's failure to contest the existence of a violation is not itself evidence, but it helps explain why the evidence of a violation is not more developed.

[6] We note that a 2017 plan submitted by the plaintiffs in the variance proceeding includes not only the delineation of the wetland's edge but also a flag marking the area as a "Coastal Wetland/Salt Marsh."

7

of the wetland, as they claim is required to find a violation under the State wetlands protection act (WPA), G. L. c. 131, § 40, and the bylaw. See note 3, supra. As the plaintiffs point out, the commission, in the course of the later variance proceeding, approved the construction insofar as it implicated the WPA, and denied the variance only as to the requirements of the bylaw. Thus the question whether the enforcement order was correct in finding an alteration of a wetland in violation of the WPA is moot and need not be resolved.

Insofar as the bylaw is concerned, the plaintiffs err in claiming that a finding of "alteration" is a prerequisite to finding a violation of the bylaw. This is in part because the plaintiffs conflate the commission's jurisdiction with the substantive requirements applicable within that jurisdiction. The plaintiffs rely on section 310-3 of the bylaw, entitled "Jurisdiction." Under that section, "[e]xcept as permitted by the [commission] or as provided for in this bylaw, no person shall commence to remove, fill, dredge, build upon, degrade, discharge into, or otherwise alter any freshwater or coastal wetland resource areas" or lands within one hundred feet thereof (emphasis added). The plaintiffs have not argued that the catchall phrase "otherwise alter" means that only those building activities that "alter" a wetland resource area are within the

8

commission's jurisdiction.  Thus, by "commenc[ing] to . . . build" their addition and porch upon land within one hundred feet of the wetland, the plaintiffs, at a minimum, subjected themselves to the commission's jurisdiction.

As for whether there was a violation, because the construction activity undisputedly had not been "permitted by the [commission]," section 310-3 makes it necessary to determine whether the activity was undertaken "as provided for in [the] bylaw."  The commission permissibly found that it was not.  What placed the plaintiffs in violation is that, contrary to the no-disturb zone provision in section 310-2.A, they "buil[t] within or upon" the no-disturb zone without being "expressly allowed [to do so] by a variance from the [commission]."  And section 1.04(3) of the regulations provides that, with certain exceptions not claimed to be relevant here, "no new structures will be permitted in the no-disturb zone."  Nothing in section 310-2.A confines its reach to only those building activities that "alter" the no-disturb zone.  Therefore, regardless of whether there was any such alteration, we see no error in the commission's conclusion that the plaintiffs violated the bylaw.[7]

_____

[7] The plaintiffs' conclusory suggestion in a single sentence of their brief that this violation warranted only "a single fine," does not rise to the level of appellate argument under Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019), and we decline to consider it.  See Maroney v. Planning

9

4. <u>Order for removal of structures</u>. The plaintiffs argue that the commission had no authority under the bylaw to order removal of the structures and at most could order the plaintiffs only to file an after-the-fact notice of intent seeking a variance from the no-disturb zone requirements. The plaintiffs base this argument on their view that "there was no evidence that the construction altered any wetland." As discussed above, however, the commission could and did find a violation regardless of whether there was any such alteration.

The plaintiffs further claim that the commission's decision to require removal of the new structures, instead of merely imposing a fine, was impermissibly motivated by a desire to impose "punishment" for the plaintiffs' failure to apply for permission for the construction. But the plaintiffs cite no provision of the bylaw or regulations, or any other law, that limited the commission's discretion in selecting a remedy here. Moreover, even if the plaintiffs had persuaded us that the removal order was "punishment" (which they have not), a reviewing court may not displace an agency's discretionary choice of a sanction absent "the most extraordinary of circumstances," and none are present here. <u>Levy</u> v. <u>Board of</u>

---

<u>Bd. of Haverhill</u>, 97 Mass. App. Ct. 678, 683 n.8 (2020) (claims not adequately argued on appeal are waived).

10

Registration & Discipline in Med., 378 Mass. 519, 528-529 (1979).

5. Commission's standing to seek judicial enforcement. The plaintiffs argue that, both under the WPA and under the bylaw, the commission lacked "standing" to assert counterclaims for enforcement of its order that the structures be removed.[8]  As for the WPA, the plaintiffs note that it allows for enforcement by a court with equity jurisdiction "upon the petition of . . . a city or town."  G. L. c. 131, § 40, thirtieth par.  The plaintiffs argue that the commission is not the same as the town and thus cannot seek enforcement of the WPA.

If it were necessary to reach this argument, we would reject it, essentially for the reasons explained immediately infra with respect to the bylaw.  The argument is moot, however, because, as already discussed, the commission later approved the construction insofar as it implicated the WPA.  The commission thus can no longer seek the structures' removal under the WPA.

---

[8] Although we adopt as a matter of convenience the plaintiffs' characterization of their argument as going to "standing," the argument appears to relate more to whether the counterclaims were asserted in the name of the real party in interest, a matter best addressed under Mass. R. Civ. P. 17 (a), 461 Mass. 1401 (2011).  We do not imply that the counterclaims here were defective in that regard.

11

The question whether it properly did so earlier in this litigation is now academic.[9]

As for the commission's ability to assert its counterclaims for enforcement of the bylaw, the plaintiffs point to bylaw section 310-11.C, which provides that, "[u]pon request of the [c]ommission, the [s]electmen and the [t]own [c]ounsel may take legal action for enforcement under civil law." The plaintiffs assert that the commission is not the same as the selectmen (or selectboard) and thus could not assert its counterclaims. Notably, the plaintiffs' argument is not that the selectboard and town counsel did not approve the filing of the counterclaims in accordance with usual town procedures. The plaintiffs argue only that the counterclaims were not asserted in the name of the correct party.

The bylaw, however, does not require that, when the selectboard and town counsel take enforcement action, they do so in their own names. At a minimum, the selectboard may authorize, and town counsel may file, a suit in the name of the

---

[9] The commission's brief suggests that it could still press the request made in one of its counterclaims to enforce its order imposing civil penalties for the plaintiffs' actions before they obtained WPA approval for the structures. The Superior Court, however, did not grant that relief, and the commission did not cross-appeal from that aspect of the court's judgment. Thus, whether the commission properly counterclaimed for penalties under the WPA is no longer a live issue.

12

town.  See G. L. c. 40, § 2 ("A town may in its corporate capacity sue and be sued by its name, and may appoint necessary agents therefor").  Here, the counterclaims were asserted in the name of the "Town of Harwich Conservation Commission."[10]  The plaintiffs fail to explain how this party designation is materially different from the designation, "Town of Harwich." Nothing in the statute authorizing cities and towns to establish conservation commissions, G. L. c. 40, § 8C, suggests that such a commission has any corporate or other legal existence separate from the municipality that created it.  Thus the addition of the phrase "Conservation Commission" to the designation "Town of Harwich" does not change the nature of the party asserting the counterclaims in any way that appears relevant, or prejudicial to the plaintiffs.[11]  We therefore reject the plaintiffs' attack on what they characterize as the commission's standing.

6. <u>Twenty-one-day hearing requirement</u>.  The plaintiffs argue that the commission, once it received the plaintiffs'

_____

[10]  The plaintiffs do not argue that counsel representing the conservation commission of Harwich is not town counsel.

[11] If the sue-and-be-sued language of G. L. c. 40, § 2, were interpreted to require the counterclaims to have been asserted in the name of the town of Harwich rather than the "Town of Harwich Conservation Commission," then the plaintiffs' two complaints for judicial review would likewise have been defective, as they named as defendants only the members of the commission, rather than the town itself.

13

after-the-fact notice of intent (including their variance request), failed to open a hearing within twenty-one days, as required by the WPA, and therefore lost jurisdiction over the matter.  See Boston Clear Water Co., LLC v. Lynnfield, 100 Mass. App. Ct. 657, 660-662 (2022), citing Oyster Creek Preservation, Inc. v. Conservation Comm'n of Harwich, 449 Mass. 859, 864-866 (2007).  The plaintiffs recognize that their representative, Shea, signed a waiver of that requirement, which waiver specified the date on which the hearing would be held (thirty-four days later, rather than twenty-one days), but the plaintiffs now claim that the waiver was involuntary and thus invalid.  Cf. Garrity, 462 Mass. at 790 (burden of proving voluntariness of waiver of WPA's requirement of decision within twenty-one days after hearing is on commission).

We will assume without deciding that Boston Clear Water Co., LLC applies where (as here), even after expiration of the twenty-one-day period, an applicant does not seek relief from the Department of Environmental Protection.  See Boston Clear Water Co., LLC, 100 Mass. App. Ct. at 661.  Nevertheless, the plaintiffs' attack on the waiver signed by Shea is unavailing, for the following reasons.

The waiver in Garrity was held involuntary because the waiver form in that case had no designated place for signature

14

by the applicant and instead was merely referenced in a checklist that the applicant was required to sign and file along with his notice of intent.  See Garrity, 462 Mass. at 789-790. The court ruled that the checklist "would reasonably be understood by an applicant to require submission of a signed waiver form as part of the application" and thus did not demonstrate a clear waiver of the applicant's rights (emphasis added).  Id. at 790.  Here, in contrast, the commission's waiver form contained a signature line, and it was signed by the plaintiffs' representative, Shea.  No more is required to prove the voluntariness of the waiver, at least where, as here, the plaintiffs cite no evidence to the contrary and instead rely solely on unsupported allegations in their brief.

The plaintiffs further contend that the commission did not meet what the plaintiffs assert is its burden under Garrity, 462 Mass. at 788-789, of showing that proper public notice of the waiver was given.  This contention, made in two short sentences without record citations, does not rise to the level of appellate argument and need not be considered.  See note 7, supra.  In any event, the burden discussed in Garrity is that of proving the voluntariness of the waiver of the requirement for a decision within twenty-one days after a hearing -- not of proving proper public notice of the waiver of the requirement

15

for a hearing within twenty-one days of the filing of the application, which is what the plaintiffs claim was lacking here.  See Garrity, supra at 790.  Moreover, here, the record shows that notice of the agreed-upon hearing date (June 7, 2017) was sent to abutters two days after the application was filed.  In addition, once the hearing was continued until the commission's June 21, 2017, meeting, the record suggests that the agenda for that meeting, which included the continued hearing on the plaintiffs' application, was posted on the town's website.  In these circumstances, and absent any assertion by the plaintiffs that any lack of public notice prejudiced them, no relief based on the claimed lack of such notice is warranted.

7.  Denial of variance.  The plaintiffs assert that the commission's decision failed to include sufficient explanation of why the variance was denied.  We are unconvinced.  The plaintiffs fail to acknowledge that the commission's regulations create, at a minimum, a strong presumption against granting the type of variance the plaintiffs sought.  Section 1.04(1) of the regulations explains that "few, if any, activities will be allowed within [the no-disturb] zone.  For example, no new structures of any kind . . . will be permitted.  The [c]ommission intends to strictly apply and enforce all requirements applicable to the no-disturb zone."  Section

16

1.04(3) states that, with two exceptions not relevant here, "no new structures will be permitted in the no-disturb zone."

Against this backdrop, section 1.13 of the regulations allows for a variance in three main circumstances.  The commission found that none of them were applicable here.  We address them in turn.

First, a variance may be granted where the applicant makes "a clear and convincing showing . . . that the proposed work . . . will not adversely affect the interests protected by the [b]ylaw," taking into account "other reasonable alternatives and mitigation which would permit the proposed work to be undertaken without deviating from the provisions of these regulations." The commission found that one of the new structures came within nine feet of the edge of the wetland and that the plaintiffs had proposed no alternatives.

Second, a variance may be granted to avoid an unconstitutional taking without compensation.  The commission found that denying the variance would not result in such a taking.

Third, a variance may be granted to avoid a hardship.  The commission found that denying the variance would not result in a hardship.  Notably, the commission found that one of the plaintiffs, before undertaking the construction, was aware of

17

the wetlands laws governing his property, yet he proceeded without any permit from the commission or the town building department.

These findings were sufficient to explain the denial of the variance. The plaintiffs point to no specific provision of the variance regulation as to which the commission's findings were inadequate. Rather, the plaintiffs appear to take issue with the reasonableness of the no-disturb zone provision itself. Yet they offer no legal argument for invalidating it on that basis, let alone an argument that they preserved for appeal.[12]

8. Adoption of no-disturb zone bylaw. The plaintiffs claim that the no-disturb zone bylaw, at least as applied here, functions as a zoning bylaw, but was not adopted in accordance with the procedural requirements of the zoning enabling act, G. L. c. 40A, § 5.

---

[12] Because we affirm on the merits the commission's decision denying the variance, we need not address the commission's argument for affirmance based on the issue preclusive effect of the Superior Court judgment upholding the enforcement order.

18

We see no indication that the plaintiffs raised this argument in either of the Superior Court proceedings leading to these appeals.  The argument is therefore waived.  See <u>Albert</u> v. <u>Municipal Court of Boston</u>, 388 Mass. 491, 493-494 (1983).

<u>Judgments affirmed</u>.

By the Court (Henry, Sacks & Tan, JJ.[13]),

Clerk

Entered:  January 30, 2026.

---

[13] The panelists are listed in order of seniority.